774

Cheshire
No. 86-338

NEW HAMPSHIRE DONUTS, INC. & a.

v.

GEORGE SKIPITARIS & a.

October 9, 1987

776

*Bell, Falk & Norton P.A.*, of Keene (*Ernest L. Bell, III*, on the brief and orally), for the plaintiffs.

*Faulkner, Plaut, Hanna, Zimmerman & Freund P.C.*, of Keene (*Joseph W. Worthen, II*, on the brief and orally), for the defendants.

JOHNSON, J. The defendants' appeal arises from the equitable decree of a Master (*Frank B. Clancy*, Esq.), approved by the Superior Court (*Manias*, J.), ordering the defendants to remove a portion of their building that materially interferes with the visibility of the plaintiffs' building in violation of certain restrictive covenants. We affirm.

The following issues have been raised: (1) whether the master erred in ruling that a portion of the defendants' building materially interferes with the plaintiffs' donut shop; (2) whether the master erred in ruling that the defendants' building would cause the plaintiffs irreparable harm; (3) whether the master's order results in economic waste; (4) whether the master erred in ruling that the plaintiffs are not bound by representations made by their sublessee to the defendants releasing the defendants from the covenants in question; (5) whether the relief recommended by the master was excessive in view of the nature and language of the restrictive covenants in question; and (6) whether the plaintiffs' claim should be barred by laches under the facts of this case.

The plaintiff New Hampshire Donuts, Inc. is the long-term lessee of land and a donut shop on West Street in Keene, according to the terms of a duly recorded lease dated May 20, 1981, from the late Laurence Colony, Jr., to the plaintiff (hereinafter referred to as the prime lease). The prime lease contains the following covenant:

> "[N]o improvements shall be erected on such land of the Lessor [Laurence D. Colony, Jr.] which will materially interfere with the . . . visibility of the Lessee's [New Hampshire Donuts, Inc.] shop and its sign to approaching automobile traffic traveling on adjoining highways or streets."

The prime lease further provided that the covenants and restrictions contained therein would be binding on the parties and their respective heirs and assigns.

The plaintiff New Hampshire Donuts, Inc. has subleased the premises to the plaintiff Keene Donuts, Inc., which is presently in possession of the property. The sublease is to run by its terms until February 6, 1988. The premises have at all relevant times been operated as a donut shop.

By deeds dated July 13, 1982, and April 1, 1983, Laurence D. Colony, III, obtained title from trustees under the wills of Laurence D. Colony, Sr. and Laurence D. Colony, Jr., respectively, to land adjacent to the premises leased by the plaintiffs. In a sales agreement and deposit receipt dated July 16, 1984, Laurence D. Colony, III, agreed to sell the premises represented by these two deeds to the defendant George Skipitaris. The sales agreement made explicit reference to the restrictive covenants contained in the plaintiffs' lease. The defendants undertook to "[obtain] approval of sign and building location by New Hampshire Donuts, Inc. as provided for in lease dated May 12, 1981, between New Hampshire Donuts, Inc. and Laurence D. Colony." The transaction was consummated by delivery of a deed dated December 3, 1984, to George Skipitaris and Bob Balkanikos, which also made reference to the restrictive covenants. The deed was duly recorded.

The defendants, who are in the business of leasing restaurants, began developing the deeded premises in April, 1985. By June 20, 1985, they had completed the foundation and part of the walls of a building to be leased as a pizza restaurant.

At some time prior to June 20, 1985, the defendants had oral discussions with one Steven Camann, who the defendants claim to have believed was the plaintiffs' representative, regarding permission to build the building substantially as planned.

On June 8, 1985, the plaintiffs advised the defendants in writing that they believed the defendants' proposed building was in violation of the restrictive covenants and that any construction by the defendants would materially reduce the visibility of the plaintiffs' donut shop to passing traffic. On or about June 21, 1985, the plaintiffs gave notice to the defendants of their claimed rights in the defendants' property and of their desire to enforce those rights. The defendants nevertheless proceeded to build.

On September 25, 1985, the plaintiffs filed a petition for a preliminary and permanent injunction, requesting a court order that the defendants' building be removed and that the plaintiffs' rights under the prime lease be enforced. After a two-day trial before a master, which included a fact-finding view of the buildings in question, the master found, *inter alia*, that the plaintiffs' operation is an "impulse buying" restaurant which must be

recognized quickly by travelers on the highway. The master further found that a southeasterly triangular portion of the defendants' building materially interferes with the visibility of the plaintiffs' shop. The defendants appeal the granting of a permanent injunction ordering that a portion of their building be removed.

■ We first consider whether the master erred in ruling that a portion of the defendants' building materially interferes with the plaintiffs' donut shop. After taking a view, and hearing all the evidence in the case, the master reached the conclusion that the southeasterly portion of the defendants' building did in fact materially interfere with the visibility of the plaintiffs' building. In asking us to overturn this finding of fact, the defendants bear a heavy burden. This court will not substitute its judgment for that of the trier of fact if it is supported by the evidence, particularly when the trier of fact has bolstered his conclusions with a view. *Heston v. Ousler*, 119 N.H. 58, 60, 398 A.2d 536, 537 (1979).

■■ In this case, we cannot say that the master's determination of material interference is unsupported by the evidence. The master took an extensive view of the buildings in question and of the approaches to them. Such a view is evidence for all purposes for the trier of fact. *See Carpenter v. Carpenter*, 78 N.H. 440, 101 A. 628 (1917). On this basis, we will not substitute our own finding for that of the trier of fact, and the master's determination that the defendants' building materially interferes with the visibility of the plaintiffs' donut shop, in violation of the restrictive covenants, must be sustained.

■■ Next we consider whether the master erred in ruling that the defendants' building as constructed would cause the plaintiffs irreparable harm. Injunctive relief is one of the peculiar and extraordinary powers of equity, *Bassett v. Company*, 47 N.H. 426, 437 (1867), normally to be exercised "only when warranted by 'imminent danger of great and irreparable damage,'" *Johnson v. Shaw*, 101 N.H. 182, 188, 137 A.2d 399, 403 (1957) (quoting *Wason v. Sanborn*, 45 N.H. 169, 171 (1862)). Where clear violations of restrictive covenants are involved, however, the irreparable harm requirement is considerably relaxed. Indeed, "[t]he injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that the plaintiff has sustained *any* pecuniary damages, are wholly immaterial." J. N. POMEROY, 4 POMEROY'S EQUITY JURISPRUDENCE § 1342, at 943 (1941) (emphasis in original). In the words of one of the ablest of the early equity judges:

> "It is clearly established by authority that there is sufficient to justify the Court interfering if there has been a breach of the covenant. It is not for the Court, but the Plaintiffs, to estimate the amount of damage that arises from the injury inflicted upon them. The moment the Court finds that there has been a breach of the covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the Plaintiff the specific performance of his contract, although his remedy is [an injunction]."

Trial court opinion of Sir George Jessel, M.R., reported in case on appeal, *Leech v. Schweder*, L.R. 9 Ch. 463, 465 (Eng. 1901) (reversing decision below). This position is in accord with the modern viewpoint that "the former policy of strictly construing restrictive covenants is no longer operative," *Joslin v. Pine River Dev. Corp.*, 116 N.H. 814, 817, 367 A.2d 599, 601 (1976), and that restrictions on the use of land by private parties have been particularly important in our century, when the value of property often depends upon maintaining the character of the neighborhood within which the property is situated. *Traficante v. Pope*, 115 N.H. 356, 358, 341 A.2d 782, 784 (1975).

When, however, equity is asked to order the removal of a structure, where construction could once have been enjoined, there may be a further question whether the trial court's order results in economic waste. In *Johnson v. Shaw*, 101 N.H. 182, 137 A.2d 399 (1957), the defendant constructed certain buildings in violation of a restrictive covenant, and the trial court enjoined him from completing a building and compelled its removal. This court held in *Johnson* that where an order for removal "is found inequitable under all the circumstances, the petition should be dismissed." *Id.* at 189, 137 A.2d at 404. This court also noted in *Johnson*, however, that a lower court finding with respect to whether an injunction will be equitable under all the circumstances will "ordinarily be implied, in the absence of indication that it was not in fact made." *Id.* at 189, 137 A.2d at 404.

In *Johnson*, this court concluded that it was not possible to infer a finding of equitability because the injunction imposed an evident hardship upon the defendant and because "the absence of an express finding by the Court and of any substantial consideration at the trial of the extent of the plaintiff's damage raises doubt as to whether the necessary supporting finding was intended to be implied." 101 N.H. at 189, 137 A.2d at 404.

No express finding was made in the trial court in *Johnson* regarding whether the injunctive relief granted "would be equitable in view of all the circumstances of the particular case." *Manchester Dairy System, Inc. v. Hayward*, 82 N.H. 193, 207, 132 A. 12, 19 (1926).

■ However, in the instant case, unlike in *Johnson*, the record below contains an express finding that the master weighed the equities as between the parties in view of all of the circumstances. The defendants, in their requests for rulings of law, citing *Johnson*, specifically stated: "A balancing of harms test is to be used in determining whether or not there is a violation of restrictions and whether or not said violation should be enjoined." The master was thus fully aware of the need to perform a balancing of harms test. The master found, as to this request, that the request should be denied "as the rule applies to defendants." The master expressly found that the plaintiffs' operation is an "impulse buying" restaurant which must be recognized quickly by potential customers, and that "visibility is of great importance to the plaintiffs." The court noted that the defendants "cannot . . . be permitted to profit by their violation of the provisions of a covenant which was well known to them . . . ." The master further found the defendants proceeded at their own risk in continuing construction after receiving notice on June 21, 1985, and that removal "would provide a *just* solution to the controversy." (Emphasis added.) This indicates that the master made a finding with respect to the relative inequity of removal sufficient to satisfy the requirements of *Johnson*.

■ The master's finding is consistent with this court's observation concerning injunctive relief that: "In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties." *Manchester Dairy System, Inc. v. Hayward*, 82 N.H. at 206, 132 A. at 18. "The exercise of the court's discretion is but a finding of fact as to whether or not granting the relief prayed for would be equitable in view of all the circumstances of the particular case." *Id.* at 207, 132 A. at 19. In this case, a review of all the circumstances leads to the same conclusion the master arrived at; namely, that plaintiffs must prevail on the balance of equities because defendants "cannot . . . be permitted to profit by their violation of the provisions of a covenant which was well known to them. . . ."

The defendants also argue that the plaintiffs should have been bound by oral representations allegedly made by Steven Camann, an operator of the donut shop premises under a sublease, giving the defendants permission to build, and releasing them from the restrictions in the prime lease. The record does not support this contention, and we find it without merit.

Estoppel exists where:

"(a) acts of commission or omission, instructional or negligent, by the principal create the appearance of authority in his agent; (b) the third party acts in reliance upon such appearance of authority, reasonably and in good faith and (c) the third party changes his position to his detriment in reliance upon the appearance of authority."

H. G. REUSCHLEIN AND W. A. GREGORY, AGENCY AND PARTNERSHIP § 25, at 66 (1979). We need not detain ourselves with the latter two elements, because there is no indication that the plaintiffs acted so as to create the appearance of authority in Mr. Camann. The record is barren of evidence tending to show that the plaintiffs had any knowledge of Steven Camann's activities or that the plaintiffs had permitted Mr. Camann to make any representations on their behalf.

Even if the plaintiffs had cloaked Mr. Camann with apparent authority, any reliance upon such misrepresentation would not be reasonable in this case. The defendants were represented by experienced counsel at the time they took title to the property in question, and had knowledge of the restrictions in question. The defendants' estoppel argument is, therefore, not supported by the facts as found by the master, and we find no error in the trial court's ruling on the issue.

The defendants argue that the relief granted in this case was excessive because it exceeds the scope of the protections to which the plaintiffs are entitled under the terms of the lease restrictions. The defendants claim that because the court's order will increase the visibility not only of the plaintiffs' shop, but also of the plaintiffs' back lot, the order is excessive, as under no reading of the lease are the plaintiffs entitled to visibility of their back lot. We find this argument without merit.

The days of narrowly construing restrictive covenants are long past. See Joslin v. Pine River Dev. Corp., 116 N.H. 814, 817, 367 A.2d 599, 601 (1976). The trial court made an express finding that the plaintiffs' operation is "an 'impulse buying' restaurant which must be recognized quickly by travelers on the highway and if

hidden, cannot cater to the impulse buying. Thus, visibility is of great importance to [the] plaintiff." The relief granted by the court honors the rights to which the plaintiffs are entitled under the restrictions in the lease; and, as a practical matter, it is clear that there is no reasonable solution other than the one found below by the trial court. No viable alternative was ever presented by the defendants.

■■ Where, as in this case, an equitable right has been demonstrated, the court "is bound to grant every kind of remedy necessary to its complete establishment, protection, and enforcement according to its essential nature." J. N. POMEROY, 4 POMEROY'S EQUITY JURISPRUDENCE § 1339, at 937 (1941). Indeed, "since it is the historic purpose of equity to secure complete justice, the courts are able to adjust the remedies so as to grant the necessary relief . . . and a . . . court sitting in equity may even devise a remedy which extends or exceeds the terms of a prior agreement between the parties, if it is necessary to make the injured party whole." *Walters v. Marathon Oil Co.*, 642 F.2d 1098, 1100 (7th Cir. 1981) (citations omitted).

■ Finally, the defendants contend that the plaintiffs should have been barred by laches in this case. Unlike statutes of limitation, laches "is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced— an inequity founded on some change in the conditions or relations of the property or the parties involved." *Wood v. General Elec. Co.*, 119 N.H. 285, 289, 402 A.2d 155, 157 (1979) (quoting 14 AM. JUR. 2d *Certiorari* § 30, at 807 (1964)). Delay which is unreasonable is required. *See* II AMERICAN LAW OF PROPERTY § 9.38, at 443 (1952). The question is one of fact, and "[w]e will not disturb the master's finding unless it is unsupported by the evidence or erroneous as a matter of law." *North Bay Council, Inc. v. Grinnell*, 123 N.H. 321, 325, 461 A.2d 114, 116–17 (1983). "The propriety of applying the doctrine of laches depends upon the conduct and situation of all the parties, not solely upon those of one." 27 AM. JUR. 2d § 162, at 702. "Mere delay in the assertion of a claim does not, of itself, amount to laches. This is obviously so where the complainant can show an excuse for his failure to seek relief more promptly." *Id.* § 163, at 703. "Where the delay was caused or contributed to by the conduct of the party claiming laches, it is excusable and is not to be attributed to the complainant." *Id.* § 165, at 707.

■ In this case, the master's finding that the plaintiffs are not barred by laches was neither erroneous nor unsupported by the evidence. The master expressly found that the plaintiffs promptly, on or about June 21, 1985, gave notice to the defendants of their claimed rights in the defendants' property and of their desire to enforce those rights, and that there was no unreasonable delay in bringing the action. Indeed, the master found that as early as July 16, 1984, nine months prior to the commencement of construction by the defendants, defendant Skipitaris signed a sales agreement with Laurence D. Colony, III, which was subject to "approval of sign and building location by New Hampshire Donuts, Inc. as provided for in a lease dated 5/12/81 between New Hampshire Donuts, Inc. and Laurence D. Colony." Defendant Balkanikos added his signature to the sales agreement subsequently, subject to identical restrictions. The defendants, then, had sufficient notice of the existence of the restrictive covenant long before preparing the construction site in April, 1985, and long before being formally advised by the plaintiffs of the plaintiffs' rights on June 8, 1985. These findings of the master are amply supported by the record and will therefore not be disturbed on appeal. *See North Bay supra.*

The plaintiffs represented, without objection, at oral argument that after June 21, 1985, negotiations ensued between the parties while construction continued. The negotiations, which continued until the date suit was brought, were ultimately unsuccessful. The defendants never received approval from the plaintiffs for the construction of the planned pizza restaurant. When negotiations proved fruitless, the plaintiffs filed suit in a timely fashion. The trial court was correct in its factual finding that the commencement of suit in September, 1985, was not caused by unreasonable delay on the part of the plaintiffs.

■ Even assuming, *arguendo*, that the plaintiffs did wait a considerable time to file suit, the plaintiffs would still prevail in this case, as both this court and courts in other jurisdictions have concluded that laches is not a bar to relief for a plaintiff who can demonstrate a reasonable excuse for delay in filing suit. This court has stated that the doctrine of laches is based on the injustice of allowing recovery where no explanation is given of an unreasonable delay which has worked an injustice. *O'Grady v. Deery,* 94 N.H. 5, 45 A.2d 295 (1946). Courts in other jurisdictions have concluded that the mere passage of time does not bar relief where a reasonable excuse for delay is apparent in the complaint, *Biggs v. Health and Hospitals Governing Commission,* 55 Ill. App. 3d 501, 507, 370 N.E.2d 1150, 1155 (1977); *People ex rel. Casey v. Health and*

*Hospitals Governing Commission,* 69 Ill. 2d 108, 370 N.E.2d 499 (1977), and that "the element of delay includes a 'lack of diligence' and 'neglect,' for an unreasonable and unexplained length of time, under circumstances permitting diligence," *Moore v. State,* 553 P.2d 8, 16 (Alaska 1976).

 The foregoing cases indicate that the plaintiffs in this case should not be denied relief on the basis of laches. Their delay in filing suit is explained by the fact that during the summer of 1985, they were engaged in negotiations regarding the construction of the pizza restaurant and had reason to believe that the matter would be settled without a lawsuit. The defendants' participation in those negotiations contributed to the plaintiffs' perception that the matter would be settled without a lawsuit. "Where the delay was caused or contributed to by the conduct of the party claiming laches, it is excusable and is not to be attributed to the complainant." 27 AM. JUR. 2d § 165, at 707. "The point in time at which plaintiffs must exercise their remedies in court or lose their right to assert their cause of action depends on the facts and equitable considerations of each case, including the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice." *Moore v. State,* 553 P.2d 8, 16 (Alaska 1976). In light of the defendants' participation in negotiations after June 21, 1985, it is understandable that the plaintiffs did not seek to redress their injury in court until it became clear that no settlement would be reached.

Courts in other jurisdictions have also concluded that laches is not a bar to relief for the plaintiff when the defendant has engaged in "conscious wrongdoing." Two federal courts have stated that if laches is invoked by a conscious wrongdoer, the wrongdoer can only prevail if the plaintiff's delay "is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by the plaintiff for a long period of time." *John Wright, Inc. v. Casper Corp.,* 419 F. Supp. 292 (E.D. Pa. 1976); *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir. 1965). Another federal court has said that in balancing the equities to determine whether plaintiff's suit is barred by laches, a court may consider whether the defendant "has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *TWM Mfg. Co. v. Dura Corp.,* 592 F.2d 346, 349 (6th Cir. 1979). The court added: "Such egregious conduct may be shown by demonstrating, for example, that the defendant to a claim of patent infringement participated in 'deliberate, calculated plagiarism.'" *Id.* Egregious conduct may also be shown by demonstrating that the defendant

to a claim of trademark infringement "was fully aware of the plaintiff's mark and reputation." *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F. Supp. 1341, 1368 (E.D. Pa. 1972).

■ In the present case, defendants Skipitaris and Balkanikos knowingly and deliberately violated a restrictive covenant by acting contrary to a provision of the sales agreement into which they had entered with Laurence D. Colony, III. Like deliberate plagiarism in a patent case or awareness of a party's mark and reputation in a trademark case, knowing and deliberate violation of a restrictive covenant in a land use case is "particularly egregious conduct which would change the equities significantly in plantiff's favor." *TWM Mfg. Co. v. Dura Corp. supra.* Three months of negotiation followed the plaintiffs' formally informing the defendants that the defendants' conduct had violated the plaintiffs' rights. Since the plaintiffs' conduct was clearly not a delay "so prolonged and inexcusable" as to amount to a "virtual abandonment" of a right, the defendants' "conscious wrongdoing" bars relief predicated upon laches. *John Wright, Inc. v. Casper Corp. supra; Tisch Hotels, Inc. v. Americana Inn, Inc. supra.* Thus, even if we were to assume that the trial court erred in its factual finding that the delay in commencing the suit until September, 1985, was not unreasonable delay on the part of the plaintiffs, the defendants are nevertheless barred from asserting laches because their participation in negotiations with the plaintiffs after June 21, 1985, contributed to the delay in the commencement of suit and because their conscious wrongdoing shifts the balance of equities in the plaintiffs' favor.

We conclude that the findings of the master are amply supported by the record, and we therefore affirm the decision of the trial court.

*Affirmed.*

All concurred.