Rockingham
No. 89-455

RONALD F. BOGARDUS & *a.*

*v.*

ROBERT A. ZINKEVICZ & *a.*

July 31, 1991

*Peter C. Scott,* of Londonderry, by brief and orally, for the plaintiffs, Ronald F. Bogardus and W. Edward Remsburg.

*Boutin & Solomon P.A.,* of Londonderry (*John R. Donnelly* on the brief and orally), for the defendants, Robert A. and Diane F. Zinkevicz.

THAYER, J. The plaintiffs appeal a decision by the Superior Court (*M. Flynn,* J.), denying their petition for a permanent injunction to enforce a restrictive covenant on the defendants' property. The trial court ruled that the plaintiffs' claim was barred under the doctrine of laches, and found that enforcement of the covenant would result in hardship to the defendants and constitute economic waste. We reverse and remand.

The facts found by the trial court include the following. The plaintiffs and the defendants are owners of lots in a residential subdivision in Derry, known as Olde County Estates. The defendants own lots six and seven. Plaintiff Bogardus lives across the street from lot six, and plaintiff Remsburg lives diagonally across the street from lot seven. The deeds to all of these lots contain references to identical restrictive covenants. The covenant at issue provides that: "No fences over 40 inches in height shall be erected on any lot nearer than 35 feet to the front lot line."

The defendants began preparing lot seven for the installation of a tennis court in July of 1986. Construction was completed in late July or early August of 1987. In August 1987, the defendants surrounded the tennis court with a ten-foot-high chain link fence. Portions of the

fence violate the terms of the covenant because they are within the thirty-five-foot protected zone.

On September 11, 1987, the plaintiffs contacted the defendants by letter regarding the fence. After the defendants failed to respond to this and subsequent letters, the plaintiffs filed a petition for permanent injunction in the superior court on February 22, 1988. On August 17, 1989, the trial court took a view of the tennis court fence and thereafter held a one-day bench trial. The court denied the petition, ruling that although the fence was in violation of the restrictive covenant, the doctrine of laches barred the plaintiffs' claim. The plaintiffs appealed to this court.

On appeal, the plaintiffs argue that the trial court erred in denying the petition on the basis of laches, because there was insufficient evidence to show that any delay in notifying the defendants of the violation was unreasonable and resulted in prejudice to the defendants. The plaintiffs also contend that the trial court erred in finding that enforcement of the covenant would work a hardship on the defendants and result in economic waste. The defendants, on the other hand, maintain that the trial court correctly denied the plaintiffs' petition for injunctive relief, because it would be inequitable and result in economic waste. The defendants also argue that if this court holds that the trial court erred in denying the plaintiffs' petition on the ground of laches, its decision should nonetheless be upheld on the alternative ground that the plaintiffs waived enforcement of the covenant.

We first address the plaintiffs' arguments concerning laches. As this court has previously stated,

"The law in this jurisdiction is unambiguous. If an owner of a tract of land has adopted a general scheme for the development of his lots, and has inserted in his deeds uniform restrictions intended for the benefit of all the lots, equitable reciprocal servitudes are thereby created on the lots.

. . .

[A] holder of a valid equitable servitude may obtain an injunction against a violation of the imposed restriction."

*Gauthier v. Robinson*, 122 N.H. 365, 368, 444 A.2d 564, 566 (1982) (citations omitted). However, "the enforcement of a restrictive covenant by injunctive relief may be denied because of the conduct of the parties." *Valhouli v. Coulouras*, 101 N.H. 320, 322, 142 A.2d 711, 713 (1958). The doctrine of laches is a defense to the enforcement of re-

strictive covenants. *Id.* Whether the doctrine of laches applies depends upon the circumstances of the particular case. *Id.* The relevant circumstances include the length of the plaintiff's delay, and "the relative harm to the defendant, in view of the plaintiff's delay, if [the defendant] is required to remove the offending structure." 20 AM. JUR. 2d *Covenants, Conditions, and Restrictions* § 332 (1965).

██ Application of the doctrine of laches is "'a question of fact for the trier of fact,'" *Estate of Younge v. Huysmans*, 127 N.H. 461, 466, 506 A.2d 282, 285 (1985) (quoting *North Bay Council, Inc. v. Grinnell*, 123 N.H. 321, 325, 461 A.2d 114, 116 (1983)), and the decision of the trial court will not be overruled unless unsupported by the evidence or erroneous as a matter of law, *Moore v. Conifer Corp.*, 130 N.H. 795, 798, 547 A.2d 298, 300 (1988); *see N.H. Donuts, Inc. v. Skipitaris*, 129 N.H. 774, 779, 533 A.2d 351, 353 (1987) (stating that the trial court's decision will not be overturned if supported by the evidence, especially when the trier of fact's conclusion is bolstered with a view). "The party asserting laches bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay." *Jenot v. White Mt. Acceptance Corp.*, 124 N.H. 701, 710, 474 A.2d 1382, 1387 (1984).

The plaintiffs argue that the defendants failed to produce sufficient evidence to establish that they knew or should have known that the defendants were about to violate the restrictive covenant. We agree. The trial court's decree states,

> "With all the activity that went on on lot 7 right in front of the eyes of the plaintiffs . . . and with such activities spanning a period of an entire year, it is found from all the evidence that the plaintiffs knew, or reasonbly [sic] should have known, that the defendants were constructing a tennis court and that the fence surrounding the court would be in excess of 40 inches in height."

Based on these findings, the trial court stated that the plaintiffs' failure to either object in a timely manner or offer a reasonable explanation for their delay constitutes laches.

The trial court based its ruling on evidence that: in July of 1986, lot seven was cleared of trees and shrubs; in December of 1986, 625 tons of gravel were delivered over a period of two days and spread around the lot; and in the summer of 1987, the tennis court surface was laid. The initial activities in 1986, however, are not sufficient to constitute notice that a tennis court was being constructed. Such activity is consistent with any number of construction projects. It was not until

the tennis court surface was laid that it was evident that a tennis court was being built. There is no indication in the record of the specific length of time it took to construct the court surface. Plaintiff Bogardus testified that he returned from a two-week trip in late August of 1987 and noticed the court surface for the first time. Neither plaintiff was notified by the defendants that they were constructing a tennis court.

Furthermore, even if the plaintiffs knew that a tennis court was being constructed, there is nothing in the record to show that, prior to the surface being laid, the tennis court as actually located would violate the covenant. According to the record, lot seven is 182 feet deep and 137 feet wide. Given the size of the lot, the plaintiffs cannot be charged with knowledge that the tennis court, the surface of which is 60 feet by 120 feet, would be built within thirty-five feet of the lot's front line. We hold, therefore, that the trial court's finding that in 1986 the plaintiffs knew or should have known that a tennis court was being constructed is based on insufficient evidence. We hold further that, in this case, construction of the tennis court would not, in and of itself, lead a reasonable person to believe that, as a result of the court's actual location, the fence around the court would be constructed in such a way as to violate the covenant. *See Chagnon Lumber Co., Inc. v. DeMulder*, 121 N.H. 173, 175, 427 A.2d 48, 50 (1981) (stating that the function of appellate review is to determine whether, on basis of the evidence, a reasonable person could have reached same decision as the trial court).

We next consider whether the conduct of the plaintiffs, once charged with knowledge that the covenant was being violated, constitutes laches. In determining whether laches applies, the threshold requirement is that there be an unreasonable delay by the plaintiffs in notifying the defendants of the violation. *N.H. Donuts, Inc. v. Skipitaris*, 129 N.H. at 783, 533 A.2d at 356. A "lapse of time should generally be considered as running from the date when the alleged legal injury occurred." 30A C.J.S. *Equity* § 116, at 59–60 (1965). In this case, the covenant was not violated until sometime in August 1987, when the fence was constructed at a height of over forty inches. The record shows that the plaintiffs, by notifying the defendants of the violation by letter on September 11, 1987, acted promptly in an effort to have the defendants comply with the restrictive covenant. Accordingly, the trial court erred in ruling that there was an unreasonable delay on the part of the plaintiffs. On these facts, it is clear that laches does not apply.

■    Additionally, the trial court found that "granting the plaintiffs' petition would work substantial hardship and injustice on the defendants and would result in economic waste." We disagree. Any hardship to the defendants was entirely of their own making and they should not "be permitted to profit by their violation of the provisions of a covenant which was well known to them. . . ." *N.H. Donuts*, 129 N.H. at 781, 533 A.2d at 354. Furthermore, the plaintiffs are only asking that a portion of the fence be lowered to conform to the restrictive covenant. Any expense of doing so is not so "'inequitable under all the circumstance'" as to rise to the level of economic waste. *Id.* at 780, 533 A.2d at 354 (quoting *Johnson v. Shaw*, 101 N.H. 182, 189, 137 A.2d 399, 404 (1957)).

■ ■    Finally, the defendants argue that this court should uphold the decision of the trial court on the alternative ground of waiver. The defendants contend that the plaintiffs have waived any right they have to enforce the covenant, because they have allegedly allowed other violations of the restrictive covenants to occur and have themselves violated the covenants. Therefore, the defendants contend that the plaintiffs are estopped from maintaining the present action. Although the defendants requested a finding with respect to waiver, the trial court did not make any express finding on this issue. "The question of waiver . . . is one of fact," *McDonough v. Snow Const. Co., Inc.*, 131 Vt. 436, 444, 306 A.2d 119, 124 (1973), and because this court is not a finder of fact, we decline to address the defendants' argument, but remand this case to the trial court for findings and rulings on this issue.

Accordingly, we reverse the trial court's decision and remand the case for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

BROCK, C.J., and HORTON, J., dissented; the others concurred.

BROCK, C.J., and HORTON, J., dissenting: In our view, the record on appeal supports fully the trial court's decision not to exercise its discretion to employ its equitable powers to enforce the restrictive covenants on the defendants' property, and we would, therefore, affirm.