Hillsborough-northern judicial district
No. 93-336

THE STATE OF NEW HAMPSHIRE

v.

SHIRLEY D. TALLMAN

December 19, 1994

*Jeffrey R. Howard*, attorney general (*Jennifer J. Patterson*, assistant attorney general, on the brief and orally), for the State.

*Duffy and Laufer*, of Manchester (*Daniel A. Laufer* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Shirley Tallman, appeals an equitable decree of the Superior Court (*Hollman,* J.) ordering the defendant to remove her buildings from the State's flood easement, which covers a major portion of her property. The defendant claims that injunctive relief is inequitable under the circumstances, and that the doctrine of laches bars the State's claim. We affirm.

In 1968, Royden C. Sanders, Jr., the defendant's predecessor in title, deeded a perpetual flood easement to the New Hampshire Water Resources Board (WRB), a State agency. This easement allows the State, at times of high water, to flow water onto the defendant's property up to 849 feet above sea level, and to temporarily store flood water there. Sanders released the State from liability for any damages caused by flowage. The easement was properly recorded. The defendant purchased the property in 1986. She had no actual notice of the easement's existence.

Three structures on the defendant's property have foundations within the State's easement: a house, a shed, and a barn. The defendant resides in the house and uses the shed and barn in her horse training business. The structures were built by a previous owner who succeeded Sanders in title. This owner was aware of the flood easement.

In 1987, proper operation of the State's Souhegan Dam caused flooding on the defendant's property. As a result of this flooding, the defendant first learned of the WRB's easement, and the WRB first learned of the encroachments on its easement.

Soon after the flood, the WRB sent the defendant a cease and desist order directing her to remove her buildings from the easement. The defendant requested a postponement allowing her time to sue her title insurance company and predecessors in title for their failure to disclose the easement's existence. The WRB agreed to defer enforcement of the order. The trial court found that "the State was cooperative enough to delay filing the instant action until the suit against her title insurance company and the other defendants therein was finally resolved."

In 1990, the defendant settled her litigation against the title company and her predecessors in title for $190,000. Shortly thereafter, the State sought to enforce the order, but the defendant refused to comply. Thus the State sought and obtained a permanent injunction preventing the defendant from operating her horse farm in the easement and forcing her to remove the buildings. This appeal followed.

On appeal, the defendant advances two arguments. First, the defendant argues that the trial court erred in its assessment of the relative harms that would follow an injunction's issuance or denial.

Second, the defendant argues that the State's claim should be barred by laches.

We first address the defendant's argument that an injunctive remedy is unjust under the circumstances. The trial court, in a detailed decree, contemplated the various harms associated with injunctive relief and found that the equities favored granting the injunction. This court upholds such findings unless they are unsupported by the evidence or erroneous as a matter of law. *UniFirst Corp. v. City of Nashua*, 130 N.H. 11, 14, 533 A.2d 372, 374 (1987).

■ The evidence supports the trial court's determination that an injunction is required to prevent great harm to the State. At trial, witnesses testified that the State bought the easement in order to prevent death and property damage. Such evidence notwithstanding, the defendant claims that the injunction will cause her to lose her home and business, and that such harm outweighs any harm the State would suffer in an injunction's absence.

At the outset, we note that the easement was properly recorded. By virtue of this recording, all subsequent owners of the property had constructive notice of the State's easement and had a duty to make inquiry to discover its extent and effect. *See Amoskeag Bank v. Chagnon*, 133 N.H. 11, 15, 572 A.2d 1153, 1156 (1990).

In her lawsuit against the title insurance company and her predecessors in interest, the defendant demanded compensation for the cost of moving her buildings, for the loss of her home and business, and for other damage caused by the 1987 flood. These demands demonstrate the defendant's acute knowledge at the time she settled the lawsuit of the State's cease and desist order and its requirements, including the requirement that she remove the buildings from the easement. Cognizant of these requirements, the defendant chose to settle her lawsuit for $190,000, which she now claims is insufficient to defray the costs of compliance.

Thus, the defendant is responsible for her current plight. Self-created hardships hold little weight in a balancing of the equities. *Pugliese v. Town of Northwood*, 119 N.H. 743, 750, 408 A.2d 113, 118 (1979). We cannot say that the injunction's issuance constituted an abuse of the trial court's broad discretion.

■ We now address the defendant's argument that the State's claim is barred by laches. This court upholds a trial court's application of laches if it is supported by the evidence and not erroneous as a matter of law. *Bogardus v. Zinkevicz*, 134 N.H. 527, 530, 596 A.2d 722, 722–23 (1991). Because the State's rights in land are not always enforced and protected with the same vigilance as private rights, the legislature has determined that no person can acquire title to State

lands by adverse possession. RSA 539:6 (1992). These same policy considerations are implicated when a defendant tries to invoke the doctrine of laches to bar a State's claim to land. Thus this court has held that the State does not forfeit or lose its rights to public lands by laches. *Moultonboro v. Crumb*, 114 N.H. 26, 28, 314 A.2d 652, 653–54 (1974). Accordingly, we uphold the trial court's finding that laches did not bar the State's claim.

*Affirmed.*

All concurred.