Pacamor Bearings v. Minebea Co.        CV-90-271-SD  04/15/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Pacamor Bearings, Inc.

    v.                                    Civil No. 90-271-SD

Minebea Co., Ltd., et al


O R D E R

This order addresses the balance of the items and issues
raised by the parties during the final pretrial conference held
on April 1, 1996, and not ruled on by the court in its order of
April 11, 1996.  Specifically, this order pertains to Points VII,
XI, XII from Plaintiffs' April 8, 1996, Submission and Items C
and I from Defendants' April 8, 1996, Submission.  Also before
the court for ruling is plaintiffs' objection to defendants'
Exhibits No. 33, 34, 90, 101, and 164, document 240,[1] and
Defendants' Motion for Production of S/N Precision Documents,
document 245.

---

[1]The court undertakes the task of ruling on said exhibits
prior to their actual introduction at trial due to defendants'
asserted intention to quote from same during their opening
statements.  See Defendants' Reply (document 242) at 3.

## 1. Customs Documents

With specific attention drawn to plaintiffs' Exhibits 178 and 179,[2] defendants object to the admission of same on grounds of both hearsay and prejudice. Defendants' Submission Point C; Defendants' Reply at 5; Defendants' Supplemental Response, document 232. Plaintiffs argue that these customs-related documents are admissible under the hearsay exception embodied in Rule 803(8)(C), Fed. R. Evid.[3]

"Rule 803(8)(C), as interpreted broadly by the Supreme

---

[2]Exhibits 178 and 179 are letters from Charles D. Ressin, Chief of the Penalties Branch of the United States Customs Service, to the District Director of Customs for the Los Angeles District. In Exhibit 178, Chief Ressin concludes, "Minebea and NMB engaged in material false acts that resulted from fraud through their importation, entry, and sale in the United States of substituted miniature and instrument ball bearings that were constructed of a stainless steel alloy that did not meet the industry specifications under which the bearings were imported, entered, and sold." Exhibit 178, at 13. Chief Ressin draws a similar conclusion in Exhibit 179, at 4.

[3]Rule 803, Fed. R. Evid., provides in relevant part,

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . . .
> (8) **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings . . ., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Court, provides for admissibility of a public office's and agency's factual investigations, including 'conclusions' and 'opinions' therein contained, the key issue on admissibility is whether the report is 'trustworthy', or, in the words of the Supreme Court, whether the report '. . . satisfies the Rule's trustworthiness requirement.'" Schwartz v. United States, 149 F.R.D. 7, 10 (D. Mass. 1993) (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170 (1988)) (other citation omitted). "As long as the investigator gathers information from all sources, does not neglect one source or prefer one source over the other, the report is admissible 'when other indicia of trustworthiness are present.'" Id. (quoting Baker v. Elcona Homes Corp., 588 F.2d 551, 558 (6th Cir. 1978), cert. denied, 441 U.S. 933 (1979)). "The burden is on the party challenging the validity of an official report to show that it is untrustworthy." Id. at 11 (citations omitted).

"The test for admissibility is two-fold: 'As long as the conclusion is [1] based on a factual investigation and [2] satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report.'" Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 45 (1st Cir. 1991) (quoting

3

Rainey, supra, 488 U.S. at 170).[4]  Such test, in this and other circuits, is intended to be interpreted broadly.  See Puerto Rico Ports Authority v. M/V Manhattan Prince, 897 F.2d 1, 8 (1st Cir. 1990); see also Lubanski, supra, 929 F.2d at 45 (citing cases from other circuits).

Upon review of the exhibits in question, the court finds and rules that same contain conclusions formed subsequent to a factual investigation, and thus satisfy the first prong of the Rule 803(8)(C) test.  See generally Plaintiffs' Exhibit 178, at 2 (indicating that United States Customs Service penalty action arose subsequent to an "investigation . . . whether the [defendants] were substituting materials used in the manufacture of imported ball bearings that did not meet industry specifications without notifying their customers . . . [and] whether the [defendants] were manipulating transfer prices by falsely dictating the quality of the bearings to affect appraisal and to avoid and evade the initiation of an anti-dumping investigation").

Additionally, defendants have failed to sustain their burden that such exhibits lack the requisite degree of trustworthiness.

---

[4]The Circuit noted that "[o]ther rules, such as Rule 403, provide additional evidentiary safeguards against irrelevant or prejudicial information."  Lubanski, supra, 929 F.2d at 45 (citing Rainey, supra, 488 U.S. at 168).

4

"[N]o formal proceedings are necessary to satisfy the prerequisites of the rule." Sabel v. Mead Johnson & Co., 737 F. Supp. 135, 142 (D. Mass. 1990). "Rather, '[t]he indice [sic] of reliability for the governmental investigative report is the fact that it is prepared pursuant to a duty imposed by law.'" Id. at 143 (quoting In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 268 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).

Accordingly, defendants' objection to Exhibits 178 and 179 is overruled.

## 2. Exhibits Relative to Anti-Dumping Investigation

Acknowledging that the court's March 11, 1996, order precludes the introduction of any International Trade Commission (ITC) findings, see Pacamor Bearings, Inc. v. Minebea, Ltd., ___ F. Supp. ___, ___, No. 90-271-SD, slip op. at 24-26 (D.N.H. Mar. 11, 1996), plaintiffs assert that "the fact of the investigation and the direct relationship of the ITC proceedings to Defendants' pricing strategy should be admissible." Plaintiffs' Submission at 35.

The motions in limine at issue in the March 11 order were directed to either (1) including the ITC findings via res

5

judicata or, more particularly, through the offensive use of collateral estoppel, as plaintiffs desired, or (2) excluding such governmental findings per defendants' request. See Pacamor, supra, ___ F. Supp. at ___, slip op. at 24. The court ruled as follows:

> Insofar as the First Circuit has yet to state its position as to section 303 proceedings, in conjunction with this court's determination that any such evidence would either tend to cause confusion of the litigated issues and/or be more prejudicial than probative, the court herewith denies plaintiffs' motion in limine and grants that of defendants. The ITC findings relative to countervailing duties are not relevant to plaintiffs' remaining causes of action, and thus are barred from being introduced at trial.

Id. at ___, slip op. at 26 (emphasis added).

The import of this ruling is quite clear: the ITC findings were not entitled to res judicata effect. Even if it were otherwise, admission of such findings into the evidence, as findings of fact, would tend to be more prejudicial than probative. Such ruling did not, however, establish a blanket prohibition regarding any evidence pertaining to the ITC proceedings or consequences thereof. Accordingly, the court herewith finds and rules that whereas the ITC findings are barred, such is not the case with evidence relating to whether the ITC undertook an investigation into defendants' business practices and any subsequent actions defendants may have taken in

6

response thereto.  Defendants' objection to such exhibits is thus overruled.


3.  Documents Related to Alleged "Threats" of Augustine Sperrazza

Plaintiffs object to several exhibits[5] listed by defendants which purport to memorialize certain conversations that took place between Augustine Sperrazza, Chief Executive Officer of the former Pacamor and Kubar companies, and Emil Karkut, an advisor to Minebea's Mr. Takahashi.

The court declines, at this time, to make a ruling on the admissibility of such exhibits, but rather defers same until such time as the testimony of Mr. Karkut and the subject exhibits are offered, if ever, at trial.


4.  Defendants' Affirmative Defenses

Defendants have asserted the affirmative defenses, among others, of "unclean hands" and "laches" as possible bars to plaintiffs' right of recovery in this litigation.  Defendants base their right to these affirmative defenses sounding in equity on the disgorgement section of the Lanham Act.  See 15 U.S.C. §

_____

[5]The specific exhibits at issue are Defendants' Exhibits No. 378, 399, 400, 401, 415, and 417.  Defendants have withdrawn as "duplicative and not necessary," Defendants' Submission at 12 n.10, Exhibits 391, 396, 454, and 558.

7

1117. Plaintiffs seek to have such affirmative defenses stricken and any evidence relating thereto declared inadmissible or irrelevant.

The court's authority to strike an affirmative defense is derived from Rule 12(f), Fed. R. Civ. P.[6] "Courts have read Rule 12(f) to allow a district court to consider a motion to strike any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion." Williams v. Jader Fuel Co., 944 F.2d 1388, 1399 (7th Cir. 1991) (citing cases), cert. denied sub nom., Jader Fuel Co. v. Williams, 504 U.S. 957 (1992)). That noted, it is further recognized that "[m]otions to strike defenses are disfavored," Coolidge v. Judith Gap Lumber Co., 808 F. Supp. 889, 893 (D. Me. 1992), and as such "'"will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense."'" Williams, supra, 944 F.2d at 1400

---

[6]Such rule states, in pertinent part,

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense . . .

8

(quoting <u>Glenside West Corp. v. Exxon Co.</u>, 761 F. Supp. 1100, 1115 (D.N.J. 1991) (quoting <u>Durham Indus., Inc. v. North River Ins. Co.</u>, 482 F. Supp. 910, 913 (S.D.N.Y. 1979))) (emphasis added).

"The equitable doctrine of laches is an affirmative defense that serves as a bar to a claim for equitable relief 'where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party." <u>Murphy v. Timberlane Regional Sch. Dist.</u>, 973 F.2d 13, 16 (1st Cir. 1992) (quoting <u>K-Mart Corp. v. Oriental Plaza Inc.</u>, 875 F.2d 907, 911 (1st Cir. 1989)) (other citations omitted); <u>see also</u> <u>Healey v. Town of New Durham Zoning Bd.</u>, ___ N.H. ___, ___, 665 A.2d 360, 368 (1995) ("'Laches, unlike limitation, is not a mere matter of time, but is principally a question of inequity of permitting the claim to be enforced--an inequity founded on some change in the conditions or relations of the property or the parties involved.'" (quoting <u>Wood v. General Elec. Co.</u>, 119 N.H. 285, 289, 402 A.2d 155, 157 (1979)) (quotation omitted in <u>Healey</u>). "In determining whether the doctrine should apply to bar a suit, the court should consider 'the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice.'" <u>Id.</u> (quoting <u>N.H. Donuts, Inc. v. Skipitaris</u>, 129 N.H. 774, 785, 533 A.2d 351, 357 (1987))

9

(quotation omitted in Healey).

Recognizing that "'[l]aches is an equitable doctrine, the application of which is a question of fact for the trial court,'" id. (quoting State v. Weeks, 134 N.H. 237, 240, 590 A.2d 614, 616 (1991)) (citation omitted in Healey), the court finds and rules that the evidence before it forms an insubstantial basis upon which to order such defense stricken from the pleadings. Accordingly, plaintiffs' motion to strike the affirmative defense of laches is herewith denied without prejudice to reassertion at the close of the evidence.

The New Hampshire Supreme Court has recognized the maxim that "[e]quitable relief will be denied if one comes to the court with unclean hands." Noddin v. Noddin, 123 N.H. 73, 76, 455 A.2d 1051, 1053 (1983) (citing Morrill v. Amoskeag Savings Bank, 90 N.H. 358, 368, 9 A.2d 519, 527 (1939)). Thus, "where a plaintiff comes into equity for relief, he and those in privity with him must be free of any inequitable conduct relative to the controversy." 27 Am. Jur. 2d Equity § 136, at 667 (1966).

In support of their "unclean hands" affirmative defense, defendants maintain that the evidence will show that "Plaintiffs imported ABEC 1 bearings and sold those bearings as ABEC 5; Plaintiffs purchased imported bearings from Defendants at a time Mr. Sper[r]azza was fully aware of the use of DD steel; and

10

Plaintiffs routinely led their customers to believe that Plaintiffs sold domestic bearings when in fact they were relabeling and supplying imported bearings." Defendants' Response at 9. Defendants further supply copies of their internal "lost business" memoranda, in which certain employees of defendants posit whether plaintiffs' hypercompetitively low prices on certain bearings were due to non-domestic manufacture of same. On this conflicting record, plaintiffs' motion to strike the "unclean hands" affirmative defense is similarly denied without prejudice.

5. "Zolfo Cooper" Documents

Plaintiffs object to defendants' Exhibits 33, 34, 90, 101,[7] and 164 on hearsay grounds. Defendants submit that such exhibits are admissible as nonhearsay pursuant to Rule 801(d)(2)(D), Fed. R. Evid.[8]

_____

[7]Defendants' Exhibit 101 appears to be an NHBB Assembly and Inspection Work Order, rather than a "Zolfo Cooper" document, and as such has been excluded from the instant analysis.

[8]Rule 801(d)(2)(D) states that

> [a] statement is not hearsay if . . . [the]
> statement is offered against a party and is . . .
> a statement by the party's agent or servant
> concerning a matter within the scope of the agency
> or employment, made during the existence of the
> relationship . . . .

11

Based on the evidence presently before the court, it appears that the financial consulting firm of Zolfo, Cooper & Co. was retained by plaintiff Wells Fargo Bank to review and comment upon "Pacamor's accounting records, business plan, our collateral, and any co-mingling or downstreaming of funds with Kubar for the purpose of determining, in their opinion, the viability of Pacamor and Kubar, both separately and consolidated." Workout Strategy for Pacamor Bearings, Inc., dated February 7, 1986, at 2 (attached to Defendants' Reply (document 242) as Exhibit C). Applying the requirements of Rule 801(d)(2)(D), Fed. R. Evid., to the exhibits in issue, the court finds that, as to each exhibit, Zolfo Cooper was plaintiffs' agent, the exhibits concern matters within the scope of Zolfo Cooper's agency or employment, and the statements of Zolfo Cooper were made during the existence of their relationship to plaintiff Wells Fargo Bank.

In consequence thereof, such exhibits are nonhearsay, and plaintiffs' objections are herewith overruled.


6.  S/N Precision Document Production

In its order of April 11, 1996, the court issued, inter alia, the following ruling:

> [P]laintiffs successfully argued to this court that any evidence regarding the business performance or corporate organization of the firm S/N Precision should be excluded from the trial.

12

> Admission of plaintiffs' Exhibit No. 20 would essentially constitute the act of "opening the door" on evidence relating to S/N Precision. The choice is thus plaintiffs' to make, whether to proceed with their case in the absence of their Exhibit 20, or to attempt introduction of such exhibit into the evidence and open the door on further evidence relative to S/N Precision.

Order of April 11, 1996, at 2.

Defendants, having received notice of plaintiffs' intention to use such exhibit in their opening statement, now move the court to order the production of certain S/N Precision documents "[i]n order for Defendants to take advantage of the opening of the door regarding S/N Precision." Defendants' Motion for Production of S/N Precision Documents at 1. Plaintiffs maintain that Exhibit 20 is not intended to be offered as evidence of defendants' current intentions regarding S/N Precision, but rather such exhibit is being offered "to show the Defendants' _past_ conduct with respect to the plaintiff Kubar." Plaintiff's Objection (document 247) ¶ 2.

Irrespective of the use to which plaintiffs intend to put such exhibit, the exhibit implicitly makes reference to S/N Precision, noting that Kubar has been given a "new life". Having elected to open the door, plaintiffs will not be heard to complain that other evidence relative to S/N Precision should be excluded. Consequently, the court herewith finds and rules that plaintiffs shall produce, on the morning of April 16, 1996, the

13

following documents:

> 1. Financial statements of S/N Precision for the period 1991-95, including profit and loss statements.
> 2. Organizational charts or other documents listing the officers, directors and shareholders of S/N Precision.
> 3. Summary records of bearings manufactured, imported and sold by S/N Precision from 1991-95.

Id. at 2.


7. Conclusion

For the reasons set forth herein, defendants' objection to plaintiffs' Exhibits 178 and 179 is overruled; defendants' objection to exhibits relating to the anti-dumping investigation of ITC is overruled; a ruling on plaintiffs' objection to the "Sperrazza threats" exhibits is deferred until same are offered at trial; plaintiffs' motion to strike the affirmative defenses of "unclean hands" and laches is denied without prejudice; plaintiffs' objection to the "Zolfo Cooper" exhibits is overruled; and defendants' motion for production of S/N Precision documents is granted.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 15, 1996

cc: All Counsel

14