# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0030, <u>J. Albert Lynch, Trustee of FIN-LYN Trust v. Town of Pelham</u>, the court on October 17, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The plaintiff, J. Albert Lynch, trustee of the FIN-LYN Trust (trustee), appeals the order of the Superior Court (<u>Ignatius</u>, J.), following a two-day bench trial and view, denying his request to enforce certain restrictive covenants in a deed from the trustee to the defendant, Town of Pelham (town).  The trustee asserted that the town's construction of a fire station and office building violated restrictive covenants governing the property and that the town violated certain other covenants regarding the planting of a tree buffer and the reconstruction and maintenance of a stone wall.  In a prior appeal, we held that the trustee has standing to enforce the covenants and remanded for the trial court to determine "whether the fire station violates the restrictive covenants, and, if so, the nature of the remedy."  <u>Lynch v. Town of Pelham</u>, 167 N.H. 14, 27 (2014).

On remand, the trial court found that:  (1) the town complied with the covenant requiring new construction to be "of Colonial architecture"; (2) the town's violation of the "no flat roof" covenant was not intentional; and (3) the balancing of the equities weighs against ordering the town to construct a second roof over the fire station.  The trustee challenges these findings.  The trustee also argues that the court erred in denying his request to bifurcate the trial to address the alleged covenant violations first and remedies second, and in denying his request for attorney's fees.

The record shows that the town started the process to construct a new fire station complex in 2004.  However, over the years, the voters rejected several, more costly proposals before approving a final design on March 13, 2012.  The trustee did not attend the public meetings in which the final design was being discussed.  In fact, the court found, the trustee did not raise any concerns "during the 18 months that the final design was being publicized, debated, and presented to Town voters."  The trustee's first written statement of concern was a letter from his counsel dated March 27, 2012, two weeks after the voters had approved the $3.9 million project.  The trustee then filed this action for declaratory and injunctive relief, but he did not seek a preliminary

injunction. The trustee testified that he had no intention to stop construction; rather, he believed that there would be ways to "pretty that thing up" once it was built.

After the trial and a view of the property, the court found that the fire station complex includes numerous design elements that are colonial in character, including "clapboard siding, extensive use of trim, windows, corner returns, use of vertical lines between the bays to mimic columns, and use of trim to create shadowing and depth on the façade." The court concluded that the town did not violate the covenant requiring the design to be "of Colonial architecture." However, on reconsideration, the court modified its order to find the term "colonial architecture" to be ambiguous, and after considering the drafters' intent, concluded that the restriction was unenforceable because the court "was unable to determine, with any reasonable certainty, what the term 'colonial architecture' means." The court added, however, that even if the covenant were enforceable, the town "incorporat[ed] as many colonial elements into the fire station complex's design as possible," and, thus, the town did not violate the covenant.

The trial court did find, however, that the town violated the covenant prohibiting construction of a building with a flat roof, concluding that although the roof over the fire station section of the complex has a "slight pitch," it appears to be flat. However, the court found that the violation was not intentional. To the contrary, the court found that the town "took substantial steps with its architects and in its meetings to discuss the covenants and seek assurance that the design would be in compliance," and the record shows that the town received such assurances.

In considering remedies, the court found that "[t]he only workable remedy presented by the plaintiff was the addition of a second pitched roof sitting over the current roof." However, the court found, a second roof could not "simply be placed over the existing roof, as the building is designed only to bear the weight of the existing roof." "Even a 'faux' roof," the court found, "would require that new weight bearing columns be punched through the current roof, which would reduce the useful space inside the building and make it more difficult to house and move the fire equipment." In addition, a second roof "would have to accommodate the heating, air conditioning and other equipment housed on the current roof" and would have to "allow for access and lighting." According to the town's construction contractor, the estimated cost of such a project would be between $1.1 million and $1.3 million. The court concluded that "[i]mposing a remedy after construction that costs from $1.1 million to $1.3 million and diminishes the usefulness of the building, as compared to the aesthetic benefits that would be achieved, would not be just." See N.H. Donuts, Inc. v. Skipitaris, 129 N.H. 774, 781 (1987) (The decision whether to enjoin a violation of restrictive covenants requires a "balancing of harms.").

2

As for the covenant requiring a tree buffer, the court found that the town "planted hundreds of trees years ago, though no one could remember the exact date." The court found that an action to enforce the tree planting covenant is barred by laches and, even if it were not barred, the town did not violate the covenant. As for the covenant requiring the town to maintain a stone wall, the court found that the town was in partial compliance, and ordered the town to "make the necessary structural repairs to the wall and establish a regular schedule of maintenance." The court denied the trustee's request for attorney's fees.

"The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court." Celestica, LLC v. Communications Acquisitions Corp., 168 N.H. 276, 280 (2015) (quotation omitted). "The exercise of the court's discretion is but a finding of fact as to whether or not granting the relief prayed for would be equitable in view of all the circumstances of the particular case." N.H. Donuts, 129 N.H. at 781 (quotation omitted). This court will not substitute its judgment for that of the trial court if it is supported by the evidence, particularly when the court has taken a view. Id. at 779. In this case, we cannot say that the trial court's decision is unsupported by the evidence. Based upon our review of the trial court's well-reasoned orders, the trustee's challenges to them, the relevant law, and the record submitted on appeal, we conclude that the trustee has not demonstrated reversible error. See Gallo v. Traina, 166 N.H. 737, 740 (2014).

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

3