ELEANOR P. O'GRADY & a. v. FRANK L. DEERY & a.

6

*Albert D. Leahy* and *Howard H. Hamlin* (by brief), for the plaintiffs.

*McLane, Davis & Carleton* and *Stanley M. Brown* (*Mr. Brown* orally), for the defendants.

MARBLE, C. J.    In order for a surviving husband to be entitled to any "portion" of the real estate of which his wife "died seized," he is required to release "his estate by the curtesy and his homestead right, if any," by a writing filed in the Probate Court.  R. L., *c.* 359, *s.* 13. Such a release was not necessary in the present case, however, since the wife did not die seized of the real estate in question.   On the contrary, title to and seisin of the whole estate remained in the husband as surviving joint tenant immediately upon his wife's death.

"There can be neither dower nor curtesy of an estate held in joint-tenancy" (1 Washburn, Real Prop., 6th *ed.*, *s.* 868), and the deed of a person mentally incompetent, but not under guardianship, "passes a seisin, and is only regarded as voidable, and not void" (*Id.*, *s.* 2107; see *Young* v. *Stevens*, 48 N. H. 133; *Hall* v. *Butterfield*, 59 N. H. 354, 356; *Oullette* v. *Ledoux*, 92 N. H. 302, 304).

The suggestion that the deeds are void in the present instance because Edward A. Deery was aware of his wife's mental incompetence is untenable.   "It is occasionally said . . . that a contract with an insane person is void if his condition is known to the contracting party.   But the word void in such cases must be used as meaning void at the option of the insane person, or his representatives, that is, voidable.   It is doubtless a fraud to enter into a contract with an insane person knowing his condition."  1 Williston, Contracts (Rev. *ed.*), *s.* 250, *pp.* 740, 741.    And where this is done, the same rule

governs as that "applicable in other cases of fraud where an equitable rescission is sought." *Wells* v. *Wells*, 197 Ind. 236, 248.

It is stated in the bill that for some twenty-five years prior to her decease, Jennie A. Deery was not mentally competent to conduct business transactions and that her husband, knowing this fact, procured by fraud and undue influence the execution of the deeds in question in order that he might acquire, to the plaintiffs' disadvantage, the whole of his wife's real estate, upon her death, instead of the portion to which the statute entitled him; that Jennie A. Deery inherited her real estate from a sister, who died on September 30, 1936, and that the deeds which the plaintiffs seek to have annulled were executed on November 14, 1936; that Mrs. Deery died on January 23, 1943, and that Edward A. Deery died on November 10, 1944.

The bill, which was not filed until January 25, 1945, contains no averment as to when the alleged fraud was discovered, nor any explanation for the apparent delay in seeking relief. Such averment and explanation were, in our opinion, required. See *Stearns* v. *Page*, 7 How. (48 U. S.) 819, 829.

It is the invariable rule that one who would seek the cancellation of an instrument procured by fraud must take steps to that end within a reasonable time after discovering that the fraud has been committed. *Judge of Probate* v. *Stone*, 44 N. H. 593, 607; *Willoughby* v. *Moulton*, 47 N. H. 205, 208; *Bechard* v. *Amey*, 82 N. H. 462, 471. Moreover, where an unreasonable delay is apparent on the face of the bill, the plaintiff must account for and excuse that delay by proper allegations, and if he fails to do so, the bill may be attacked by demurrer. 19 Am. Jur. 188, s. 241; *Whidden* v. *Whidden*, 67 N. H. 303, 304.

From the recitals of the present bill it is natural to presume that the plaintiffs, heirs of Jennie A. Deery, must have known at the time Mrs. Deery's estate was being administered that she had conveyed away the real estate she had inherited and that she lacked the necessary mental capacity to execute a proper deed. If such were the case, it could not fairly be found, in the absence of a satisfactory excuse, that the plaintiffs were diligent in bringing the bill, and especially did the delay call for explanation in view of the fact that no action was taken until the time had passed when the husband could elect whether to retain or to release his curtesy and homestead rights. See *Atkinson* v. *McCulloh*, 149 Md. 662, 675, 676.

"The broad equitable doctrine of *laches* is applicable . . . quite irrespective of any statute, and is based on the injustice of allowing

recovery on the facts stated in a bill where no explanation is given of a delay which appears to have been unreasonable and to have worked injustice." 1 Whitehouse, Equity Practice, 400, 401, note.

In the case of *Chamberlain* v. *Lyndeborough,* 64 N. H. 563, 564, 565, it is said: "The well established rule in equity is, that if a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief. . . . The unexplained failure of the plaintiffs to take any legal action whatever for a period of more than two and a half months after their right accrued, and until after the town had incurred expense, assumed obligations, and changed its position, brings this case far within the rule."

Since the bill in the present case contains no definite statement as to the time when the plaintiffs acquired knowledge of the material facts on which the bill is based, and since the facts alleged indicate an unreasonable delay in seeking relief, for which no explanation is given, the order must be

*Demurrer sustained.*

All concurred.