A. EDWIN MAHLE, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF PEORIA, Defendant-Appellee.

Third District No. 3—92—0376

Opinion filed February 22, 1993.—Rehearing denied April 7, 1993.

Daniel F. Webb, of Chicago, for appellant.

Karen L. Kendall and Bradley S. McMillan, both of Heyl, Royster, Voelker & Allen, of Peoria (John C. Mulgrew, Jr., of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, A. Edwin Mahle, filed a complaint against the defendant, First National Bank of Peoria (Bank), alleging that the Bank, as trustee, breached a fiduciary duty it owed the plaintiff, who was the beneficiary of a trust administered by the Bank. Following a bench trial, the trial court entered judgment for the Bank. The plaintiff appeals. We affirm.

The record reveals that on November 15, 1973, the plaintiff and Bank created a revokable, *inter vivos* trust, with the Bank as trustee and the plaintiff as beneficiary. The trust provided that the plaintiff could direct in writing that the trustee pay the plaintiff any amount of principal or income of the trust at any time.

After several conversations with Bank employees, the plaintiff, on January 20, 1975, consented to having his trust fund used as collateral for a loan that the plaintiff's nephew, Kirk Mahle, received from a Minnesota bank. In exchange for offering the trust fund as collateral, the plaintiff was to receive 2% annual interest from Kirk on the money Kirk had borrowed from the Minnesota bank. Additionally, the plaintiff was to receive a lien on Kirk's real estate.

The plaintiff executed a "Letter of Direction" which directed the trustee to prepare an "Assignment of Beneficial Interest" of the trust to be used as collateral for Kirk's loan with the Minnesota bank. The plaintiff also executed an "Assignment of Beneficial Interest" which purported to release the trustee from any liability in connection with the transaction.

Thereafter, in January of 1976, the Minnesota bank sent notice to the defendant Bank that it considered the entire loan made to Kirk due and payable. At that point, Kirk apparently defaulted. As a result, the defendant Bank subsequently sent the Minnesota bank $100,000 from the trust fund. The defendant Bank did not recover

any trust assets from Kirk and did not proceed against any of his real estate.

In 1982, the defendant Bank sent the plaintiff written notice, as required by the terms of the trust agreement, that it was withdrawing as trustee. In 1989, the plaintiff filed suit against the Bank alleging that it breached a fiduciary duty regarding the commitment of the trust to Kirk's business venture by not disclosing all material facts so that plaintiff could make an informed decision.

At the trial on the plaintiff's complaint, the plaintiff testified that Kirk had called him about securing collateral for a loan for Kirk's sailboat business. The plaintiff claimed that he did not understand what Kirk wanted, but he gave him the telephone number of the Bank and told him to contact Richard Gillet, a trust officer at the Bank. Shortly thereafter, the plaintiff called Gillet and told him that Kirk would be calling. The plaintiff further testified that he could not recall the substance of his phone conversation with Gillet. Furthermore, he could not recall whether he had had any phone conversations with Gillet discussing the pros and cons of allowing his trust assets to be used as collateral for Kirk's business debts. The plaintiff also noted that he did not recall Bank officials advising him not to use trust assets for this purpose.

Richard Gillet testified that he had had two to five phone conversations with the plaintiff about the contemplated transaction. During those conversations, the plaintiff told Gillet that Kirk wanted to start a boat-rental business in Minnesota and that the bank in Minnesota insisted on additional collateral before it loaned him money. According to Gillet, the plaintiff and Kirk had already discussed the details. If the plaintiff provided the needed collateral, he would receive, from Kirk, 2% annual interest on the amount of the loan.

Gillet further testified that at some point Kirk called him and said that he wanted the plaintiff to assign his interest in the trust as collateral for the loan. Gillet told Kirk to send detailed financial statements, which Gillet ultimately received.

Gillet recalled a phone conversation he had had with the plaintiff in which they discussed the risks of backing a young man going into business for the first time. According to Gillet, he had cautioned the plaintiff that those types of businesses have a high "mortality rate." He indicated to the plaintiff that if Kirk's business had some problems, the plaintiff could lose money. He pointed out to the plaintiff that Kirk's own bank would not loan him the money because he did not have enough collateral and experience. According

to Gillet, the plaintiff told him that he was comfortable with Kirk's ability to survive in the sailboat business. The plaintiff further stated that he felt he would be protected if he had the "inventories collateralized" and liens on Kirk's real estate.

Andrew Drendel, a Bank trust department employee, testified that Richard Gillet was his direct supervisor and that they were both involved in the administration of the plaintiff's trust account. According to Drendel, the plaintiff requested that they assist Kirk "in whatever way [they could] in his business venture." Drendel stated that he and Gillet had several conversations with the plaintiff advising the plaintiff that "this was the type of thing they did not want to do," but that the plaintiff had already decided he wanted to do it and so they followed his directions. Drendel eventually sent documents for the plaintiff to consent to the loan and to release the trustee from liability. Upon receiving the documents, the plaintiff called Drendel for further explanation. At that time, Drendel again explained that the Bank did not want to partake in the transaction and that it did not recommend it to him. Drendel further explained to the plaintiff that if he wanted to proceed with the transaction he would have to sign the documents. Regarding the exculpatory clause, Drendel informed the plaintiff that the Bank did not want to undertake the transaction as part of the normal course of its business and that it wanted to be held harmless if the transaction "did not happen the way the plaintiff had planned."

According to Drendel, when he called the plaintiff sometime later about Kirk's default, the plaintiff indicated that he did not want to force Kirk out of business. The plaintiff told Drendel that Kirk was having problems with a divorce and he did not want to foreclose and force him out of business.

On appeal, the plaintiff argues that the trial court erred in finding that the Bank, as trustee, did not breach a fiduciary duty. He contends that the instant transaction was an imprudent investment, and therefore, the Bank was required to advise him of all material facts surrounding the transaction but failed to do so. The plaintiff relies on *White v. Sherman* (1897), 168 Ill. 589, 48 N.E. 128, in support of his position.

■ It is well recognized that trustees must employ such diligence and prudence as persons of discretion and intelligence employ in their own similar affairs. (*McCormick v. McCormick* (1988), 180 Ill. App. 3d 184, 536 N.E.2d 419.) However, if the trustee acts within the powers delegated by the trust, his liability is limited to loss occasioned only through fraud or negligence. (*In re Estate of*

*Sanders* (1940), 304 Ill. App. 57, 25 N.E.2d 923; *McCormick v. McCormick* (1988), 180 Ill. App. 3d 184, 536 N.E.2d 419.) Furthermore, a trust beneficiary who consents to or approves of an act, omission, or transaction by a trustee may upon the ground of waiver or estoppel be precluded from subsequently objecting to the impropriety of such act, omission, or transaction; this rule may arise from acquiescence, request, participation, or notification. (*McCormick v. McCormick* (1988), 180 Ill. App. 3d 184, 536 N.E.2d 419.) Moreover, exculpatory provisions in trust instruments are generally held effective except as to breaches of trust committed in bad faith, or intentionally, or with reckless indifference to the interest of the beneficiary. *Axelrod v. Giambalvo* (1984), 129 Ill. App. 3d 512, 472 N.E.2d 840.

We find that the plaintiff's reliance on *White v. Sherman* (1897), 168 Ill. 589, 48 N.E. 128, is misplaced. In *White*, the beneficiaries of the testamentary trust did not have the power to direct the use and investment of trust assets. There, the trustee invested trust assets in speculative railroad stocks. The supreme court found that the trustee's suggestion of the stocks to the beneficiary and the beneficiary's response that the trustee should use his own judgment were insufficient to show acquiescence by the beneficiaries in the purchase of the speculative stocks.

■ Here, unlike in *White*, the settlor created a revocable, *inter vivos* trust making himself the beneficiary. Furthermore, the present plaintiff had the plenary power to direct payment of the principal and income of the trust. The transaction in question was not an imprudent investment undertaken by the trustee. Rather, the transaction was entered into at the direction of the plaintiff for the personal benefit of a relative. Under the terms of the trust agreement, the Bank was bound to follow the plaintiff's written directions regarding trust assets. The record clearly indicates that the plaintiff wanted to assist Kirk in his business venture and that the plaintiff gave his written consent directing the Bank to use trusts assets for that purpose. The plaintiff further signed a document exculpating the Bank from liability in connection with the transaction. Moreover, the trust officers testified that they advised the plaintiff about the dangers of this type of an investment but that the plaintiff nonetheless wanted to proceed with the transaction. The plaintiff admitted that he did not recall the substance of at least two conversations he had with Gillet about the transaction. Under the circumstances, we find that the trial court properly found that the Bank did not breach a fiduciary duty.

Our resolution of the above issue renders moot the remaining issue raised by the parties.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

LYTTON and STOUDER, JJ., concur.