Mark A. MARCUCCI, Plaintiff, Appellee,

v.

Marion J. HARDY, Defendant, Appellant.

Mark A. MARCUCCI, Plaintiff,
Appellant,

v.

Marion J. HARDY, Defendant, Appellee.

Nos. 94–2290, 95–1005.

United States Court of Appeals,
First Circuit.

Sept. 20, 1995.

John R. Harrington, with whom David F. Conley and Sulloway & Hollis were on brief, Concord, NH, for defendant.

Charles A. Szypszak, with whom Laura E. Tobin and Orr and Reno, P.A. were on brief, Concord, NH, for plaintiff.

SELYA, CYR and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

Mark A. Marcucci initiated this diversity action in the United States District Court for the District of New Hampshire in December 1993, alleging that his daughter, Marion J. Hardy, had appropriated to her own use approximately $550,000 held in trust for Marcucci. Following a bench trial, the district court imposed a constructive trust on the proceeds Hardy received from the sale of the Marcucci homestead and awarded $36,097.54 in attorney fees to Marcucci. Hardy appealed. Marcucci cross-appealed from a district court order rejecting his claims to joint accounts managed by Hardy. We affirm the district court judgment, in part, and reverse in part.

# I

## BACKGROUND

In the late 1950s, Marcucci, owner of a plumbing and fuel oil business, conveyed the Marcucci "family homestead" in Waterbury, Connecticut, and other assets, to his wife, Angela, in order to insulate their holdings from potential business liability claims. In the early 1980s, as Marcucci and Angela advanced in years, they caused the name of their daughter, Marion J. Hardy, to be added to their joint bank and investment accounts. Aside from an $18,000 deposit by Hardy in

1987, all funds in these joint accounts derived from Marcucci.

Although Marcucci, Angela, and Hardy continued to be listed as "joint owners," Hardy took charge of most disbursements. The Marcuccis retained the ability to withdraw funds from the joint accounts, but rarely did so. From time to time, Angela told Hardy, in Marcucci's presence, that some of the monies in these joint accounts were intended for Hardy's personal use. When Angela died in October 1988, the joint accounts contained $364,663.

Angela left $50,000 in cash to Constance Waterman, her other daughter, but the Marcucci homestead and the residue of her estate went to Hardy. Hardy invited Marcucci to live with her, first in Colorado and later in her New Hampshire home. All of Marcucci's expenses were defrayed by Hardy with his social security income and with funds disbursed from the joint accounts. The DeFeo family, Hardy's neighbors, helped care for Marcucci while Hardy was away from New Hampshire for approximately eighteen months during Operation Desert Storm and while performing her other military duties.

In the summer of 1990, prior to the final probate of Angela's will, Marcucci learned that the joint account balances were substantially less than $364,663. At about this time, Constance told Marcucci that Hardy was claiming the right to withdraw funds from the joint accounts. Although Marcucci commented at the time that he would be without substantial assets unless he contested Angela's will, he decided against doing so after obtaining legal advice, and the will became final in August 1990.[1]

Meanwhile, in July 1990, Hardy had created a revocable trust ("Marcucci Family Trust"), with $173,801 from the joint accounts, retaining sole discretion to make *inter vivos* distributions to Marcucci, the only beneficiary. She showed the trust instrument to Marcucci and, with his encouragement, loaned $150,000 of the trust corpus to the DeFeo family, to alleviate their serious financial problems. Six weeks later the DeFeos filed petitions in bankruptcy and the $150,000 loan is presumed uncollectible. No trust distributions were either promised or made to Marcucci.

By November 1992, the relationship between Marcucci and Hardy had deteriorated. With assistance from Constance, Marcucci moved to a Connecticut retirement home and Hardy refused to contribute to his support until he returned to live with her. Marcucci, 95 years old and virtually indigent, is unable to afford the retirement home accommodations. In July 1993, Hardy sold the Marcucci homestead, applying the net proceeds ($108,-000) to the mortgage on her New Hampshire home.

## II

### DISCUSSION

#### A. The Hardy Appeal

##### 1. Constructive Trust

Hardy asserts three challenges to the constructive trust imposed on the homestead proceeds. First, she claims the district court erred in rejecting her affirmative defenses based on the statute of limitations and laches. Second, she argues that Marcucci expressly withdrew his claim to the homestead proceeds at trial. Finally, she contends that the constructive trust ruling was either based on clearly erroneous findings of fact or erroneous conclusions of law.

##### a) Affirmative Defenses

■ Hardy moved for judgment on the pleadings, *see* Fed.R.Civ.P. 12(c), on the alternative grounds that the constructive trust claim was barred by New Hampshire's three-year statute of limitations, N.H.Rev.Stat.

---

1. Marcucci admits he knew the homestead had been left to Hardy by Angela. An April 1989 letter, which Hardy wrote for Marcucci and signed "Dad," stated that the homestead belonged to Hardy. Marcucci's daughter, Constance, and her husband, advised Marcucci that "the house and cars are [Hardy's]" and that Angela had left everything to Hardy except for the $50,000 given to Constance. The district court found that Marcucci knew, by the summer of 1990, that substantial amounts had been withdrawn from the joint accounts by Hardy, and that by September 1990 Marcucci "believed that unless he contested his wife's will, he would have no substantial assets."

Ann. § 508:4, I (Supp.1994); *see Sullivan v. Marshall*, 93 N.H. 456, 44 A.2d 433, 434 (1945) (claim for restitution against constructive trustee time-barred), or by laches.[2] The district court denied the motion on the ground that Marcucci had no knowledge, prior to March 1993, that Hardy had mishandled or misapplied either joint account funds or other Marcucci assets. Although the district court opinion did not revisit the matter, there can be no doubt that the court rejected Hardy's affirmative defenses, as the constructive trust claim was allowed to proceed.[3]

■ Under N.H.Rev.Stat.Ann. § 508:4, I (Supp.1994), the three-year limitations period commences when the "plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury or its causal relationship to the act or omission complained of." Whether a claimant discovered the injury, or in the exercise of reasonable diligence should have discovered it, is a question of fact. *French v. R.S. Audley, Inc.*, 123 N.H. 476, 464 A.2d 279, 282 (1983). Accordingly, we review for clear error. *Reilly v. United States*, 863 F.2d 149, 163 (1st Cir.1988).

There is undisputed evidence that Constance Waterman informed Marcucci in the summer of 1990 that Hardy claimed the right to withdraw funds from the joint accounts, and that Marcucci knew that Angela had left the Marcucci homestead to Hardy. Nevertheless, in the circumstances presented here—including the close family relationship, Marcucci's age and dependency, as well as the nature and purpose of Marcucci's transfers of the homestead and the joint accounts—Hardy's assertion of rights in these assets was not tantamount to knowledge on the part of Marcucci that his daughter was refusing to recognize and honor his own beneficial interest in the assets. Further, Hardy's conduct served to toll the limitations period by engendering in Marcucci a reasonable sense of confidence which disguised the need for any legal action. *See New Hampshire Donuts, Inc. v. Skipitaris*, 129 N.H. 774, 533 A.2d 351, 356 (1987).

For more than four years—October 1988 to November 1992—Hardy took care of Marcucci in her Colorado and New Hampshire homes. She informed him that she had established the "Marcucci Family Trust," with Marcucci as its sole beneficiary, and consulted with him before making the DeFeo loan from trust monies. These actions were entirely consistent with an extant trustee-beneficiary relationship, and, whether so intended or not, sufficed to provide a reasonable basis for rekindling Marcucci's confidence in Hardy, especially in light of the close family relationship and his advanced age and highly dependent state. Thus, the district court record clearly warrants the conclusion that Marcucci neither knew, nor should he reasonably have believed, that his daughter claimed outright ownership of the Marcucci homestead.

■ In July 1993, however, Hardy sold the Marcucci homestead and applied the proceeds toward the mortgage on her New Hampshire residence, conduct which unequivocally announced her open, adverse claim to the entire Marcucci homestead. Within six months thereafter, Marcucci initiated the present action. Accordingly, we agree with the district court that the action was not time-barred, either by the New Hampshire statute of limitations or laches.[4]

---

2. At oral argument, Hardy suggested for the first time that a Connecticut statute of limitations applies to the constructive trust claim. As this contention was neither raised below, nor seasonably broached on appeal, we deem it waived. *See Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987). In all events, it is unavailing. In diversity cases, the federal courts normally look to the choice-of-law rules of the forum state, in this case New Hampshire. As a general rule, New Hampshire applies its own statute of limitations. *See Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 549 A.2d 1187, 1191–92 (1988). We believe it would do so here.

3. Hardy contends that the failure to make express findings on her affirmative defenses necessitates remand. *See, e.g., Touch v. Master Unit Die Prods., Inc.*, 43 F.3d 754, 757–59 (1st Cir. 1995) (finding district court decision "insufficiently clear to enable effective appellate review"). Unlike the situation presented in *Touch*, however, the import of the district court's factual findings in this case plainly signaled its rationale.

4. Under the doctrine of laches, a limitations period may be foreshortened if "unreasonable" and unexplained delay in filing an equitable claim has prejudiced the defendant. *See Jenot v. White Mountain Acceptance Corp.*, 124 N.H. 701, 474

### b) *Withdrawal of Homestead Claim*

During closing argument, Marcucci's trial counsel stated: "we are not asking in this proceeding for return of the home." Hardy frivolously contends that Marcucci thereby withdrew his claim to the homestead *proceeds*. Construed in context, the language employed by counsel simply reflected the reality that the homestead had been sold to a third party; thus, a claim could only be asserted against the sale proceeds.[5]

### c) *The Merits*

Hardy next contends that the district court misinterpreted New Hampshire law as permitting the imposition of a constructive trust in these circumstances. She argues that it was error to do so absent an *express* promise by Hardy to reconvey the homestead to Marcucci. We do not agree. There was sufficient circumstantial evidence alone to support a reasonable inference that there had been an implicit promise to reconvey based on the intra-family nature of the transfer from Marcucci to his wife, Angela.

*See Pleakas v. Juris,* 107 N.H. 393, 224 A.2d 74, 78–79 (1966) (the promise to reconvey may be inferred from the surrounding circumstances, including the relationship between the parties and the potential for unjust enrichment).[6] Moreover, Angela's devise of the homestead to Hardy remained subject to the constructive trust impressed upon it at the time Marcucci conveyed it to Angela.[7] Angela therefore held the homestead in trust for Marcucci, and it was devised to Hardy *subject to that trust. See generally* 4 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 289.1 (4th ed. 1989) [hereinafter: *Scott on Trusts* ] (noting that "[d]evisee takes subject to a trust because one who pays no value for the trust property would be unjustly enriched at the beneficiary's expense if the trustee were permitted to keep it"); *see also Herman v. Edington,* 331 Mass. 310, 118 N.E.2d 865, 869 (1954) (holding that one who takes trust property without consideration, and either with or without notice, becomes a trustee herself).[8] The court did not abuse its discretion in imposing a constructive trust on the homestead proceeds.

A.2d 1382, 1387 (1984); *O'Grady v. Deery,* 94 N.H. 5, 45 A.2d 295, 297 (1946). The laches defense does not lie, however, if the defendant has "caused or contributed" to the delay. *See New Hampshire Donuts,* 533 A.2d at 356.

**5.** The cases cited by Hardy are totally inapposite. *See Hoffer v. Morrow,* 797 F.2d 348, 350 (7th Cir.1986) (noting that a criminal defendant may waive a double jeopardy claim by pleading guilty); *Flannery v. Carroll,* 676 F.2d 126, 132 (5th Cir.1982) (observing that plaintiff may waive a particular theory of liability by choosing not to plead it); *American Locomotive Co. v. Gyro Process Co.,* 185 F.2d 316, 318–19 (6th Cir.1950) (noting that defendant may waive contractual right to arbitration by failing, for seven-year period, to move for stay of judicial proceedings to permit arbitration).

**6.** We likewise reject Hardy's contention that the homestead was not impressed with a constructive trust when she received it from her mother, because the reason for its conveyance to her mother—Marcucci's desire to insulate it from business liability claims—ceased when Marcucci retired. First, the premise is dubious, since it is by no means clear that Marcucci's business liability exposure would cease at retirement, at least as concerns pre-retirement activity. Second, it seems more consonant with the intent of the parties that once the reason for the transfer no longer remained viable, reconveyance to Marcucci *should* obtain, particularly since unjust en-

richment is the core consideration in the constructive trust analysis. *See, e.g., Cornwell v. Cornwell,* 116 N.H. 205, 356 A.2d 683, 686 (1976).

**7.** Hardy maintains that Marcucci subsequently released her from any obligation to reconvey. She points to his testimony that, "as long as [the house] was given to Marion, I say [sic] it's okay as long as Marion's going to take care of me the rest of my life." On the contrary, this testimony bolsters the district court finding that Marcucci was prepared to permit Hardy to retain title to the homestead in trust only as long as she continued to care for him.

**8.** Hardy attempts to challenge two district court findings of fact: that (1) the threat of liability suits was the impetus for the transfer of the homestead from Marcucci to Angela; and (2) the entire homestead (rather than a mere half-interest) was transferred. Marcucci testified, among other things, to having built the house, that it was his, that he had never put it in Angela's name, and that the family depended entirely on his earnings for its financial support. On the other hand, he testified as well that "[t]he house was half and half. She owned half and I owned half." The record contains no deed or direct evidence as to the status of the title to the homestead prior to Marcucci's transfer to Angela. Similarly, there was conflicting evidence as to Marcucci's concern about losing the house in a lawsuit brought by one of his customers. Based

## 2. Attorney Fees

█ Marcucci asserted a demand for attorney fees in the complaint, which Hardy opposed in her answer. Hardy contends that the district court improperly awarded attorney fees to Marcucci since her defenses were not frivolous and she did not litigate in bad faith. The appellate record discloses little insight into the rationale for the district court award, nor did Hardy request elucidation or reconsideration by the district court.

The district court cited to *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617, 619–20 (1977), which held that unreasonable litigation tactics which unnecessarily prolong litigation can constitute bad faith even though the litigation position was not entirely frivolous. *See Marcucci v. Hardy*, No. C–93–645–L, at 14 (D.N.H. Nov. 16, 1994). Hardy's failure to challenge the ruling in the district court deprives us of the benefit of the district court's rationale. Nonetheless, absent district court findings suggesting any adequate basis for departing from the so-called American Rule, *BTZ, Inc. v. Great Northern Nekoosa Corp.*, 47 F.3d 463, 465 (1st Cir.1995) (noting, as a general rule, that litigants must bear their own attorney fees absent statutory authority, or agreement, to the contrary), and since we are unable to discern a sufficient basis for doing so on the present record, the attorney fee award must be vacated.[9]

## B. Marcucci Cross–Appeal

### 1. Joint Accounts

Marcucci cross-appeals from the district court order disallowing his claims to the joint accounts. He contends that he established exclusive title to the accounts "converted" by Hardy, and, alternatively, that he was entitled to have a constructive trust imposed on the accounts, lest Hardy be unjustly enriched.[10]

#### a) Conversion Claim

█ Although the district court did not state its grounds for rejecting the conversion claim, the rationale is clear. "An action for conversion is based on the defendant's exercise of dominion or control over goods which is inconsistent with the rights of the person entitled to immediate possession." *Rinden v. Hicks*, 119 N.H. 811, 408 A.2d 417, 418 (1979). The right to possession is a key element, *see, e.g., McGranahan v. Dahar*, 119 N.H. 758, 408 A.2d 121, 126 (1979), which the claimant must establish. *See Wujnovich v. Colcord*, 105 N.H. 451, 202 A.2d 484, 485 (1964) (to recover property allegedly converted, plaintiff had burden of proving title).[11]

The district court rejected the all-or-nothing positions advanced by both parties—that each held exclusive title to the accounts notwithstanding their joint status.[12] It found

on this record, which would support either finding, we cannot conclude that the district court clearly erred in finding that Marcucci transferred the entire title to the homestead to Angela to avoid losing it in a lawsuit. *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 152 (1st Cir.1990) (noting that factfinder's choice between two permissible views of the evidence cannot be clearly erroneous under Fed.R.Civ.P. 52(a)).

9. The citation to *Harkeem, supra*, cannot suffice, since the district court articulated no basis upon which Hardy's litigation *tactics* could be found impermissibly obdurate, noting only that the *lawsuit* should never have "wended its way to federal court." *See also Touch*, 43 F.3d at 757–59 (discussed *supra* note 3). This seems to us altogether inadequate to take this case out from under the American Rule. On this record, therefore, the attorney fee award must be vacated.

10. Marcucci's alternative "claim" to an accounting fails, since the district court supportably found that Hardy had exercised due diligence in reconstructing the relevant activity in the joint accounts.

11. Under the law of all three jurisdictions conceivably applicable to this claim, *intent* is the

central factor in determining entitlement to funds held in joint accounts. *See Grodzicki v. Grodzicki*, 154 Conn. 456, 226 A.2d 656, 657 (1967) (intent of original owner of mutual account is an essential factor in determining rights to account); *Blanchette v. Blanchette*, 362 Mass. 518, 287 N.E.2d 459, 461 (1972) ("In disputes arising while both parties to a joint bank account are still alive we have frequently upheld allegations or findings that there was no donative intent."); *In re Wszolek Estate*, 112 N.H. 310, 295 A.2d 444, 447 (1972) (to establish *inter vivos* gift of joint accounts, plaintiff must prove donative intent and delivery of accounts).

12. Although Marcucci notes that his business was the original "source" of most of these funds, he cites no authority for the view that this conclusively established his entitlement to all the funds once the joint accounts had been placed in all three names. On the other hand, Hardy argued that the mere fact the funds were held in three names entitled her to withdraw all of the funds, foreclosing any possibility of conversion. But the form of the accounts is not conclusive evidence of their ownership where, as here, there is evidence of contrary intent. *See New Hampshire Sav. Bank v. McMullen*, 88 N.H. 123, 185 A. 158, 160 (1936).

that "Mrs. Marcucci stated repeatedly and openly, sometimes in [Marcucci's] presence, that she had given money to [Hardy] and that she wanted [Hardy] to use it for her own enjoyment." *Marcucci,* order at 5–6; *see Dover Coop. Bank v. Tobin's Estate,* 86 N.H. 209, 166 A. 247 (1933) (noting that gift of bank accounts is established by proof of donor's manifest intent to make unconditional delivery, and donee's acceptance). Not only did Marcucci fail to establish his ownership of *all* the funds in the joint accounts, *Wujnovich,* 202 A.2d at 485, but the district court found that he failed to show that any *ascertainable portion had not been intended* as a gift to Hardy. Further, Hardy expended "substantial amounts" for Marcucci's benefit.[13] Given these supportable findings, we cannot fault the district court ruling that it may well have been speculative to conclude that Marcucci sustained any damages; and that the *amount* of any damages could only have been arrived at through conjecture. *See Robie v. Ofgant,* 306 F.2d 656, 660 (1st Cir.1962) ("[D]amages must be proven, that is, they must not be speculative, and [plaintiff] must not be made more than whole."). The district court did not err in dismissing the conversion claim.

### b) *Constructive Trust*

■ Alternatively, Marcucci claims that a constructive trust should have been impressed to preclude unjust enrichment of Hardy. We review for abuse of discretion. *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,* 60 F.3d 867, 874 (1st Cir. 1995) (citations omitted). Marcucci therefore must show that the district court's rejection of the constructive trust claim constituted "a serious lapse in judgment." *Id.* at 875.

Although the record reflects that all but $18,000 in the joint accounts (deposited by Hardy) derived from Marcucci, it is equally clear that large sums were expended for his benefit. Moreover, the district court supportably found that Angela intended to give Hardy an *unspecified portion* of the joint accounts for her exclusive use, Marcucci was present when Angela declared her donative intent, and he knew that Hardy was handling the joint accounts.

■ A constructive trust may be created where the particular confidential or fiduciary relationship would give rise to a significant potential for unjust enrichment absent equitable relief. *See Carroll v. Daigle,* 123 N.H. 495, 463 A.2d 885, 888 (1983). The district court supportably found that Hardy used approximately $173,000 to purchase property for herself in Colorado and the record would support findings that Angela had given Hardy the money for the house and that Marcucci derived benefit from living there with Hardy. Since a substantial portion of the remainder had been used for Marcucci's own benefit, or their mutual benefit, and it was impossible to determine how much each was entitled to receive, we find no abuse of discretion.

### 2. *"Marcucci Family Trust"*

■ Finally, Marcucci argues that Hardy breached her fiduciary duty, under the so-called "prudent man" standard, *see* N.H.Rev. Stat.Ann. 564–A:3, I (1974), by improperly lending $150,000 from the Marcucci Family Trust to the DeFeo family, and that she is chargeable with the loss. Hardy responds that her withdrawal of funds from a revocable trust constituted a constructive revocation of the trust, (2) Marcucci consented to this allocation of trust funds, and (3) the allocation was reasonable and did not violate the "prudent man" standard.

■ We need not consider whether Hardy violated the "prudent man" standard, because the district court found that Marcucci actively encouraged the $150,000 loan to the DeFeos. A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the action. Restatement (Second) of Trusts § 216(1) (1957) (endorsing estoppel rationale); *Mahle v. First Nat'l Bank of Peoria,* 241 Ill.App.3d 672, 182 Ill.Dec. 691, 692–93, 610 N.E.2d 115, 116–17 (beneficiary

---

**13.** The district court found that the joint accounts held $364,663 at the time of Angela's death in October 1988; the $150,000 loan to the DeFeos was motivated in part by Marcucci's gratitude to the people who had cared for him during Hardy's absence; Hardy "paid all common living expenses and all particular living expenses" not covered by Marcucci's social security benefits. Hardy also used $173,000 from a joint account to buy a home in Colorado, where Marcucci lived until Hardy and Marcucci relocated to New Hampshire.

consented to risky loan to nephew), *cert. denied,* 152 Ill.2d 561, 190 Ill.Dec. 892, 622 N.E.2d 1209 (1993). There is ample evidence to support the finding that Marcucci consented to the $150,000 loan, with the knowledge that the DeFeos were about to lose their own home due to financial problems. Thus, we find that Marcucci is estopped from challenging Hardy's decision to make the DeFeo loans.

## III

### *CONCLUSION*

*The district court judgment is affirmed, except for the attorney fee award, which is vacated. Costs are awarded to the respective appellees in Nos. 94–2290 and 95–1005. So ordered.*