USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2290 MARK A. MARCUCCI, Plaintiff, Appellee, v. MARION J. HARDY, Defendant, Appellant.  ____________________ No. 95-1005 MARK A. MARCUCCI, Plaintiff, Appellant, v. MARION J. HARDY, Defendant, Appellee.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Martin F. Loughlin, Senior U.S. District Judge] __________________________  ____________________ Selya, Cyr and Boudin, Circuit Judges. ______________  ____________________ John R. Harrington, with whom David F. Conley and Sulloway & __________________ _______________ __________ Hollis were on brief for defendant. ______ Charles A. Szypszak, with whom Laura E. Tobin and Orr and Reno, ___________________ ______________ _____________ P.A. were on brief for plaintiff. ____  ____________________ September 20, 1995  ____________________ CYR, Circuit Judge. Mark A. Marcucci initiated this CYR, Circuit Judge. ______________ diversity action in the United States District Court for the District of New Hampshire in December 1993, alleging that his daughter, Marion J. Hardy, had appropriated to her own use approximately $550,000 held in trust for Marcucci. Following a bench trial, the district court imposed a constructive trust on the proceeds Hardy received from the sale of the Marcucci home- stead and awarded $36,097.54 in attorney fees to Marcucci. Hardy appealed. Marcucci cross-appealed from a district court order rejecting his claims to joint accounts managed by Hardy. We affirm the district court judgment, in part, and reverse in part. I I BACKGROUND BACKGROUND __________ In the late 1950s, Marcucci, owner of a plumbing and fuel oil business, conveyed the Marcucci "family homestead" in Waterbury, Connecticut, and other assets, to his wife, Angela, in order to insulate their holdings from potential business liabili- ty claims. In the early 1980s, as Marcucci and Angela advanced in years, they caused the name of their daughter, Marion J. Hardy, to be added to their joint bank and investment accounts. Aside from an $18,000 deposit by Hardy in 1987, all funds in these joint accounts derived from Marcucci.  Although Marcucci, Angela, and Hardy continued to be listed as "joint owners," Hardy took charge of most disburse- ments. The Marcuccis retained the ability to withdraw funds from 2 the joint accounts, but rarely did so. From time to time, Angela told Hardy, in Marcucci's presence, that some of the monies in these joint accounts were intended for Hardy's personal use. When Angela died in October 1988, the joint accounts contained $364,663.  Angela left $50,000 in cash to Constance Waterman, her other daughter, but the Marcucci homestead and the residue of her estate went to Hardy. Hardy invited Marcucci to live with her, first in Colorado and later in her New Hampshire home. All of Marcucci's expenses were defrayed by Hardy with his social security income and with funds disbursed from the joint accounts. The DeFeo family, Hardy's neighbors, helped care for Marcucci while Hardy was away from New Hampshire for approximately eigh- teen months during Operation Desert Storm and while performing her other military duties.  In the summer of 1990, prior to the final probate of Angela's will, Marcucci learned that the joint account balances were substantially less than $364,663. At about this time, Constance told Marcucci that Hardy was claiming the right to withdraw funds from the joint accounts. Although Marcucci commented at the time that he would be without substantial assets unless he contested Angela's will, he decided against doing so after obtaining legal advice, and the will became final in August 1990.1   ____________________ 1Marcucci admits he knew the homestead had been left to Hardy by Angela. An April 1989 letter, which Hardy wrote for Marcucci and signed "Dad," stated that the homestead belonged to 3 Meanwhile, in July 1990, Hardy had created a revocable trust ("Marcucci Family Trust"), with $173,801 from the joint accounts, retaining sole discretion to make inter vivos distribu- _____ _____ tions to Marcucci, the only beneficiary. She showed the trust instrument to Marcucci and, with his encouragement, loaned $150,000 of the trust corpus to the DeFeo family, to alleviate their serious financial problems. Six weeks later the DeFeos filed petitions in bankruptcy and the $150,000 loan is presumed uncollectible. No trust distributions were either promised or made to Marcucci.  By November 1992, the relationship between Marcucci and Hardy had deteriorated. With assistance from Constance, Marcucci moved to a Connecticut retirement home and Hardy refused to contribute to his support until he returned to live with her. Marcucci, 95 years old and virtually indigent, is unable to afford the retirement home accommodations. In July 1993, Hardy sold the Marcucci homestead, applying the net proceeds ($108,000) to the mortgage on her New Hampshire home. II II DISCUSSION DISCUSSION __________ A. The Hardy Appeal A. The Hardy Appeal ________________  ____________________ Hardy. Marcucci's daughter, Constance, and her husband, advised Marcucci that "the house and cars are [Hardy's]" and that Angela had left everything to Hardy except for the $50,000 given to Constance. The district court found that Marcucci knew, by the summer of 1990, that substantial amounts had been withdrawn from the joint accounts by Hardy, and that by September 1990 Marcucci "believed that unless he contested his wife's will, he would have no substantial assets."  4 1. Constructive Trust 1. Constructive Trust __________________ Hardy asserts three challenges to the constructive trust imposed on the homestead proceeds. First, she claims the district court erred in rejecting her affirmative defenses based on the statute of limitations and laches. Second, she argues that Marcucci expressly withdrew his claim to the homestead proceeds at trial. Finally, she contends that the constructive trust ruling was either based on clearly erroneous findings of fact or erroneous conclusions of law.  a) Affirmative Defenses a) Affirmative Defenses ____________________ Hardy moved for judgment on the pleadings, see Fed. R. ___ Civ. P. 12(c), on the alternative grounds that the constructive trust claim was barred by New Hampshire's three-year statute of limitations, N.H. Rev. Stat. Ann. 508:4, I (Supp. 1994); see ___ Sullivan v. Marshall, 44 A.2d 433, 434 (N.H. 1945) (claim for ________ ________ restitution against constructive trustee time-barred), or by laches.2 The district court denied the motion on the ground that Marcucci had no knowledge, prior to March 1993, that Hardy had mishandled or misapplied either joint account funds or other Marcucci assets. Although the district court opinion did not  ____________________ 2At oral argument, Hardy suggested for the first time that a Connecticut statute of limitations applies to the constructive trust claim. As this contention was neither raised below, nor seasonably broached on appeal, we deem it waived. See Clauson v. ___ _______ Smith, 823 F.2d 660, 666 (1st Cir. 1987). In all events, it is _____ unavailing. In diversity cases, the federal courts normally look to the choice-of-law rules of the forum state, in this case New Hampshire. As a general rule, New Hampshire applies its own statute of limitations. See Keeton v. Hustler Magazine, 549 A.2d ___ ______ ________________ 1187, 1191-92 (N.H. 1988). We believe it would do so here.  5 revisit the matter, there can be no doubt that the court rejected Hardy's affirmative defenses, as the constructive trust claim was allowed to proceed.3  Under N.H. Rev. Stat. Ann. 508:4, I (Supp. 1994), the three-year limitations period commences when the "plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury or its causal relationship to the act or omission complained of." Whether a claimant discovered the injury, or in the exercise of reasonable diligence should have discovered it, is a question of fact. French v. R.S. Audley, ______ ____________ Inc., 464 A.2d 279, 282 (N.H. 1983). Accordingly, we review for ____ clear error. Reilly v. United States, 863 F.2d 149, 163 (1st ______ _____________ Cir. 1988).  There is undisputed evidence that Constance Waterman informed Marcucci in the summer of 1990 that Hardy claimed the right to withdraw funds from the joint accounts, and that Marcu- cci knew that Angela had left the Marcucci homestead to Hardy. Nevertheless, in the circumstances presented here including the close family relationship, Marcucci's age and dependency, as well as the nature and purpose of Marcucci's transfers of the homestead and the joint accounts Hardy's assertion of rights in these assets was not tantamount to knowledge on the part of  ____________________ 3Hardy contends that the failure to make express findings on her affirmative defenses necessitates remand. See, e.g., Touch ___ ____ _____ v. Master Unit Die Prods., Inc., 43 F.3d 754, 757-59 (1st Cir. _____________________________ 1995) (finding district court decision "insufficiently clear to enable effective appellate review"). Unlike the situation presented in Touch, however, the import of the district court's _____ factual findings in this case plainly signaled its rationale.  6 Marcucci that his daughter was refusing to recognize and honor his own beneficial interest in the assets. Further, Hardy's conduct served to toll the limitations period by engendering in Marcucci a reasonable sense of confidence which disguised the need for any legal action. See New Hampshire Donuts v. Skipi- ___ ____________________ ______ taris, 533 A.2d 351, 356 (N.H. 1987).  _____ For more than four years October 1988 to November 1992 Hardy took care of Marcucci in her Colorado and New Hampshire homes. She informed him that she had established the "Marcucci Family Trust," with Marcucci as its sole beneficiary, and consulted with him before making the DeFeo loan from trust monies. These actions were entirely consistent with an extant trustee-beneficiary relationship, and, whether so intended or not, sufficed to provide a reasonable basis for rekindling Marcucci's confidence in Hardy, especially in light of the close family relationship and his advanced age and highly dependent state. Thus, the district court record clearly warrants the conclusion that Marcucci neither knew, nor should he reasonably have believed, that his daughter claimed outright ownership of the Marcucci homestead.  In July 1993, however, Hardy sold the Marcucci home- stead and applied the proceeds toward the mortgage on her New Hampshire residence, conduct which unequivocally announced her open, adverse claim to the entire Marcucci homestead. Within six months thereafter, Marcucci initiated the present action. Accordingly, we agree with the district court that the action was 7 not time-barred, either by the New Hampshire statute of limita- tions or laches.4  b) Withdrawal of Homestead Claim b) Withdrawal of Homestead Claim _____________________________ During closing argument, Marcucci's trial counsel stated: "we are not asking in this proceeding for return of the home." Hardy frivolously contends that Marcucci thereby withdrew his claim to the homestead proceeds. Construed in context, the ________ language employed by counsel simply reflected the reality that the homestead had been sold to a third party; thus, a claim could only be asserted against the sale proceeds.5 c) The Merits c) The Merits __________ Hardy next contends that the district court misinter- preted New Hampshire law as permitting the imposition of a constructive trust in these circumstances. She argues that it was error to do so absent an express promise by Hardy to reconvey _______ the homestead to Marcucci. We do not agree. There was suffi-  ____________________ 4Under the doctrine of laches, a limitations period may be foreshortened if "unreasonable" and unexplained delay in filing an equitable claim has prejudiced the defendant. See Jenot v. ___ _____ White Mountain Acceptance Corp., 474 A.2d 1382, 1387 (N.H. 1984); _______________________________ O'Grady v. Deery, 45 A.2d 295, 297 (N.H. 1946). The laches _______ _____ defense does not lie, however, if the defendant has "caused or contributed" to the delay. See New Hampshire Donuts, 533 A.2d at ___ ____________________ 356.  5The cases cited by Hardy are totally inapposite. See ___ Hoffer v. Morrow, 797 F.2d 348, 350 (7th Cir. 1986) (noting that ______ ______ a criminal defendant may waive a double jeopardy claim by plead- ing guilty); Flannery v. Carroll, 676 F.2d 126, 132 (5th Cir. ________ _______ 1982) (observing that plaintiff may waive a particular theory of liability by choosing not to plead it); American Locomotive Co. _______________________ v. Gyro Process Co., 185 F.2d 316, 318-19 (6th Cir. 1950) (noting ________________ that defendant may waive contractual right to arbitration by failing, for seven-year period, to move for stay of judicial proceedings to permit arbitration).  8 cient circumstantial evidence alone to support a reasonable inference that there had been an implicit promise to reconvey based on the intra-family nature of the transfer from Marcucci to his wife, Angela. See Pleakas v. Juris, 224 A.2d 74, 78-79 (N.H. ___ _______ _____ 1966) (the promise to reconvey may be inferred from the surround- ing circumstances, including the relationship between the parties and the potential for unjust enrichment).6 Moreover, Angela's devise of the homestead to Hardy remained subject to the con- structive trust impressed upon it at the time Marcucci conveyed it to Angela.7 Angela therefore held the homestead in trust for Marcucci, and it was devised to Hardy subject to that trust. See _______ __ ____ _____ ___ generally 4 Austin W. Scott & William F. Fratcher, The Law of _________ ___________ Trusts 289.1 (4th ed. 1989) [hereinafter: Scott on Trusts] ______ ________________ (noting that "[d]evisee takes subject to a trust because one who  ____________________ 6We likewise reject Hardy's contention that the homestead was not impressed with a constructive trust when she received it from her mother, because the reason for its conveyance to her mother Marcucci's desire to insulate it from business liabili- ty claims ceased when Marcucci retired. First, the premise is dubious, since it is by no means clear that Marcucci's business liability exposure would cease at retirement, at least as con- cerns pre-retirement activity. Second, it seems more consonant with the intent of the parties that once the reason for the transfer no longer remained viable, reconveyance to Marcucci should obtain, particularly since unjust enrichment is the core ______ consideration in the constructive trust analysis. See, e.g., ___ ____ Cornwell v. Cornwell, 356 A.2d 683, 686 (N.H. 1976). ________ ________ 7Hardy maintains that Marcucci subsequently released her from any obligation to reconvey. She points to his testimony that, "as long as [the house] was given to Marion, I say [sic] it's okay as long as Marion's going to take care of me the rest of my life." On the contrary, this testimony bolsters the district court finding that Marcucci was prepared to permit Hardy to retain title to the homestead in trust only as long as she continued to care for him. 9 pays no value for the trust property would be unjustly enriched at the beneficiary's expense if the trustee were permitted to keep it"); see also Herman v. Edington, 118 N.E.2d 865, 869 ___ ____ ______ ________ (Mass. 1954) (holding that one who takes trust property without consideration, and either with or without notice, becomes a trustee herself).8 The court did not abuse its discretion in imposing a constructive trust on the homestead proceeds. 2. Attorney Fees  2. Attorney Fees _____________ Marcucci asserted a demand for attorney fees in the complaint, which Hardy opposed in her answer. Hardy contends that the district court improperly awarded attorney fees to Marcucci since her defenses were not frivolous and she did not litigate in bad faith. The appellate record discloses little insight into the rationale for the district court award, nor did Hardy request elucidation or reconsideration by the district court.  The district court cited to Harkeem v. Adams, 377 A.2d _______ _____ 617, 619-20 (N.H. 1977), which held that unreasonable litigation tactics which unnecessarily prolong litigation can constitute bad faith even though the litigation position was not entirely frivolous. See Marcucci v. Hardy, No. C-93-645-L, at 14 (D.N.H. ___ ________ _____  ____________________ 8Hardy attempts to challenge two district court findings of fact: (1) that the threat of liability suits was the impetus for the transfer of the homestead from Marcucci to Angela; and (2) the entire homestead (rather than a mere half-interest) was transferred. Although Hardy asserts, conclusorily, that she challenged these findings below, the appellate record indicates otherwise. Thus, these claims were waived. See Clauson, 823 ___ _______ F.2d at 666. 10 Nov.16, 1994). Hardy's failure to challenge the ruling in the district court deprives us of the benefit of the district court's rationale. Nonetheless, absent district court findings suggest- ing any adequate basis for departing from the so-called American Rule, BTZ, Inc. v. Great Northern Nekoosa Corp., 47 F.3d 463, 465 _________ ____________________________ (1st Cir. 1995) (noting, as a general rule, that litigants must bear their own attorney fees absent statutory authority, or agreement, to the contrary), and since we are unable to discern a sufficient basis for doing so on the present record, the attorney fee award must be vacated.9 B. Marcucci Cross-Appeal B. Marcucci Cross-Appeal _____________________ 1. Joint Accounts 1. Joint Accounts ______________ Marcucci cross-appeals from the district court order disallowing his claims to the joint accounts. He contends that he established exclusive title to the accounts "converted" by Hardy, and, alternatively, that he was entitled to have a con- structive trust imposed on the accounts, lest Hardy be unjustly enriched.10 a) Conversion Claim a) Conversion Claim ________________  ____________________ 9The citation to Harkeem, supra, cannot suffice, since the _______ _____ district court articulated no basis upon which Hardy's litigation tactics could be found impermissibly obdurate, noting only that _______ the lawsuit should never have "wended its way to federal court." _______ See also Touch, 43 F.3d at 757-59 (discussed supra note 3). This ___ ____ _____ _____ seems to us altogether inadequate to take this case out from under the American Rule. On this record, therefore, the attorney fee award must be vacated. 10Marcucci's alternative "claim" to an accounting fails, since the district court supportably found that Hardy had exer- cised due diligence in reconstructing the relevant activity in the joint accounts. 11 Although the district court did not state its grounds for rejecting the conversion claim, the rationale is clear. "An action for conversion is based on the defendant's exercise of dominion or control over goods which is inconsistent with the rights of the person entitled to immediate possession." Rinden ______ v. Hicks, 408 A.2d 417, 418 (N.H. 1979). The right to possession _____ is a key element, see, e.g., McGranahan v. Dahar, 408 A.2d 121, ___ ____ __________ _____ 126 (N.H. 1979), which the claimant must establish. See Wujno- ___ ______ vich v. Colcord, 202 A.2d 484, 485 (N.H. 1964) (to recover ________________ property allegedly converted, plaintiff had burden of proving title).11 The district court rejected the all-or-nothing posi- tions advanced by both parties that each held exclusive title to the accounts notwithstanding their joint status.12 It found  ____________________ 11Under the law of all three jurisdictions conceivably applicable to this claim, intent is the central factor in deter- ______ mining entitlement to funds held in joint accounts. See ___ Grodzicki v. Grodzicki, 226 A.2d 656, 657 (Conn. 1967) (intent of _________ _________ original owner of mutual account is an essential factor in determining rights to account); Blanchette v. Blanchette, 287 __________ __________ N.E.2d 459, 461 (Mass. 1972) ("In disputes arising while both parties to a joint bank account are still alive we have frequent- ly upheld allegations or findings that there was no donative in- tent."); In re Wszolek Estate, 295 A.2d 444, 447 (N.H. 1972) (to ____________________ establish inter vivos gift of joint accounts, plaintiff must _____ _____ prove donative intent and delivery of accounts). 12Although Marcucci notes that his business was the original "source" of most of these funds, he cites no authority for the view that this conclusively established his entitlement to all the funds once the joint accounts had been placed in all three names. On the other hand, Hardy argued that the mere fact the funds were held in three names entitled her to withdraw all of the funds, foreclosing any possibility of conversion. But the form of the accounts is not conclusive evidence of their owner- ship where, as here, there is evidence of contrary intent. See ___ New Hampshire Sav. Bank v. McMullen, 185 A. 158, 160 (N.H. 1936). _______________________ ________ 12 that "Mrs. Marcucci stated repeatedly and openly, sometimes in [Marcucci's] presence, that she had given money to [Hardy] and that she wanted [Hardy] to use it for her own enjoyment." Marcucci, order at 5-6; see Dover Coop. Bank v. Tobin's Estate, ________ ___ ________________ ______________ 166 A. 247 (N.H. 1933) (noting that gift of bank accounts is established by proof of donor's manifest intent to make uncondi- tional delivery, and donee's acceptance). Not only did Marcucci fail to establish his ownership of all the funds in the joint ___ accounts, Wujnovich, 202 A.2d at 485, but the district court _________ found that he failed to show that any ascertainable portion had _____________ _______ ___ not been intended as a gift to Hardy. Further, Hardy expended ___ ____ ________ "substantial amounts" for Marcucci's benefit.13 Given these supportable findings, we cannot fault the district court ruling that it may well have been speculative to conclude that Marcucci sustained any damages; and that the amount of any damages could ______ only have been arrived at through conjecture. See Robie v. ___ _____ Ofgant, 306 F.2d 656, 660 (1st Cir. 1962) ("[D]amages must be ______ proven, that is, they must not be speculative, and [plaintiff] must not be made more than whole."). The district court did not err in dismissing the conversion claim.  ____________________ 13The district court found that the joint accounts held $364,663 at the time of Angela's death in October 1988; the $150,000 loan to the DeFeos was motivated in part by Marcucci's gratitude to the people who had cared for him during Hardy's absence; Hardy "paid all common living expenses and all particu- lar living expenses" not covered by Marcucci's social security benefits. Hardy also used $173,000 from a joint account to buy a home in Colorado, where Marcucci lived until Hardy and Marcucci relocated to New Hampshire.  13 b) Constructive Trust b) Constructive Trust __________________ Alternatively, Marcucci claims that a constructive trust should have been impressed to preclude unjust enrichment of Hardy. We review for abuse of discretion. Texaco Puerto Rico, ___________________ Inc., v. Department of Consumer Affairs, 60 F.3d 867, 874 (1st ____ _______________________________ Cir. 1995) (citations omitted). Marcucci therefore must show that the district court's rejection of the constructive trust claim constituted "a serious lapse in judgment." Id. at 875.  ___ Although the record reflects that all but $18,000 in the joint accounts (deposited by Hardy) derived from Marcucci, it is equally clear that large sums were expended for his benefit. Moreover, the district court supportably found that Angela intended to give Hardy an unspecified portion of the joint ___________ _______ accounts for her exclusive use, Marcucci was present when Angela declared her donative intent, and he knew that Hardy was handling the joint accounts.  A constructive trust may be created where the particu- lar confidential or fiduciary relationship would give rise to a significant potential for unjust enrichment absent equitable relief. See Carroll v. Daigle, 463 A.2d 885, 888 (N.H. 1983). ___ _______ ______ The district court supportably found that Hardy used approximate- ly $173,000 to purchase property for herself in Colorado and the record would support findings that Angela had given Hardy the money for the house and that Marcucci derived benefit from living there with Hardy. Since a substantial portion of the remainder had been used for Marcucci's own benefit, or their mutual bene- 14 fit, and it was impossible to determine how much each was enti- tled to receive, we find no abuse of discretion.  2. "Marcucci Family Trust"  2. "Marcucci Family Trust" _____________________ Finally, Marcucci argues that Hardy breached her fiduciary duty, under the so-called "prudent man" standard, see ___ N.H. Rev. Stat. Ann. 564-A:3, I (1974), by improperly lending $150,000 from the Marcucci Family Trust to the DeFeo family, and that she is chargeable with the loss. Hardy responds that her withdrawal of funds from a revocable trust constituted a con- structive revocation of the trust, (2) Marcucci consented to this allocation of trust funds, and (3) the allocation was reasonable and did not violate the "prudent man" standard. We need not consider whether Hardy violated the "pru- dent man" standard, because the district court found that Marcu- cci actively encouraged the $150,000 loan to the DeFeos. A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the action. Restatement (Second) of Trusts 216(1) (1957) (endorsing estoppel rationale); Mahle v. _____ First Nat'l Bank of Peoria, 610 N.E.2d 115, 116-17 (Ill.App.3d.) __________________________ (beneficiary consented to risky loan to nephew), cert. denied, _____ ______ 622 N.E.2d 1209 (Ill. 1993). There is ample evidence to support the finding that Marcucci consented to the $150,000 loan, with the knowledge that the DeFeos were about to lose their own home due to financial problems. Thus, we find that Marcucci is estopped from challenging Hardy's decision to make the DeFeo loans.  15 III III CONCLUSION CONCLUSION __________ The district court judgment is affirmed, except for the The district court judgment is affirmed, except for the _______________________________________________________ attorney fee award, which is vacated. Costs are awarded to the attorney fee award, which is vacated. Costs are awarded to the _____________________________________ _________________________ respective appellees in Nos. 94-2290 and 95-1005. So ordered.  respective appellees in Nos. 94-2290 and 95-1005. So ordered.  ________________________________________________ __________ 16